[No. S106796. Apr. 26, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
JIMMIE LEE OATES, Defendant and Appellant.

## COUNSEL

Howard C. Cohen, under appointment by the Supreme Court, and John L. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Lora Fox Martin, Gil P. Gonzalez, Matthew Mulford, Gary Brozio and Steven T. Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CHIN, J.**—Penal Code section 12022.53, which is also known as the 10-20-life law, prescribes substantial sentence enhancements for using a firearm in the commission of certain listed felonies.[1] Subdivision (b) of the statute provides for an additional and consecutive 10-year prison term for anyone convicted of a listed felony "who, in the commission of" that felony, "personally uses a firearm" (hereafter subdivision (b) enhancement). Subdivision (c) of the statute increases the added penalty to 20 years if the criminal "personally and intentionally discharges a firearm" in the commission of the listed crime (hereafter subdivision (c) enhancement). Subdivision (d) of the statute makes the added punishment "25 years to life" if the criminal, "in the commission of" the listed felony, "personally and intentionally discharges a firearm and proximately causes great bodily injury . . . or death, to any person other than an accomplice" (hereafter subdivision (d) enhancement). The statute also provides that "[o]nly one additional term of imprisonment under this section shall be imposed per person for each crime," and directs the court to impose "the enhancement that provides the longest term of imprisonment" where "more than one enhancement per person is found true under this section." (§ 12022.53, subd. (f).)

We granted review in this case to determine the proper application of these provisions where a defendant fires two shots at a group of five people, but hits and injures only one. The Court of Appeal held that even where such a defendant is convicted of five counts of attempted premeditated murder—one for each person in the group—because only one person has been injured, section 654's prohibition against multiple punishment for a single act or omission permits imposition of only one subdivision (d) enhancement with respect to a single count. As to the other counts, the Court of Appeal held that

---

[1] All further statutory references are to the Penal Code. Section 12022.53 was amended after commission of the crimes here at issue. Because those amendments do not affect our analysis, we will quote from the current version of the statute.

subdivision (c) enhancements are proper. We find that the Court of Appeal erred and that imposition of multiple subdivision (d) enhancements is proper under these circumstances. We reverse the Court of Appeal's judgment insofar as it directed otherwise.

FACTUAL BACKGROUND

On the afternoon of September 11, 1999, members of the North Side Ontario gang (NSO), including Victor Mendoza, Gustavo Barrera and Walter Ramirez, entered territory claimed by NSO's rival, the East Side Ontario gang (ESO). Mendoza got into a fistfight with an ESO associate. Defendant Jimmie Lee Oates is an ESO member.

That night, after returning to territory claimed by NSO, Mendoza, Barrera and Ramirez went to the home of another NSO member, Manuel Castrejon. About 10:00 p.m., as Mendoza, Barrera, Ramirez, and Castrejon socialized in front of Castrejon's house with Jose Gonzalez, another NSO member, a green car drove down the street and stopped in front of the house. Someone inside the car fired two shots at the group, and the car sped away. The first shot hit Barrera in the leg, which had to be amputated as a result.

Shortly after the shooting, a California Highway Patrol officer spotted the dark green car and began pursuit. He saw three people in the car, including defendant in the front passenger seat. The car eventually stopped and its occupants fled on foot. The officer apprehended defendant, who admitted that he had been a passenger in the car. The other occupants were also apprehended and identified as ESO gang members. A subsequent search along the car's attempted escape route turned up a .44-caliber handgun bearing one of defendant's fingerprints and containing two empty cartridges and four live rounds. The live rounds were jacketed, hollow-point cartridges, which are designed to mushroom on impact so as to cause more severe injury. One of the rounds had an additional modification that was also designed to inflict more severe injury: an X shape sawed through its nose, resulting in fragmentation upon impact.

Based on these events, the San Bernardino County District Attorney later filed an information charging defendant with, as here relevant, five counts of attempted premeditated murder, one for each person in the group at which he fired. As to each of these counts, the information also alleged enhancements under subdivisions (b), (c), and (d) of section 12022.53. The jury convicted defendant of all five counts and found true all of the associated section 12022.53 enhancement allegations. In sentencing defendant for the attempted murder of Barrera—count 1—the trial court added a subdivision (d) enhancement of 25 years to life to the punishment for the underlying crime. It also

imposed a subdivision (b) enhancement and a subdivision (c) enhancement, but "stay[ed]" them pursuant to section 12022.53, subdivision (f). For the attempted murder of Castrejon—count 5—the trial court imposed a consecutive term that included a 20-year subdivision (c) enhancement. It also imposed a subdivision (b) enhancement and a subdivision (d) enhancement, but "stay[ed]" the former "pursuant to" section 12022.53, subdivision (f), and stayed the latter "pursuant to [section] 654." For the three remaining attempted murder convictions—counts 3, 4 and 6—the court imposed concurrent sentences. Each of those concurrent sentences included a subdivision (b) enhancement and a subdivision (c) enhancement that the court "stayed pursuant to" subdivision (f) of section 12022.53, and a subdivision (d) enhancement that the court "stay[ed] . . . pursuant to [section] 654."

On appeal, defendant argued in part that, as to each attempted murder conviction, instead of *imposing* three section 12022.53 enhancements and then staying two of the *imposed* enhancements, under subdivision (f) of section 12022.53, the trial court should have actually *imposed* only one section 12022.53 enhancement. Although the People agreed with defendant, they asserted that the trial court should have imposed one subdivision (d) enhancement for each conviction and "that the lesser enhancements should have been stricken." Thus, the People argued, with respect to count 5, the trial court should have imposed a subdivision (d) enhancement instead of a subdivision (c) enhancement. The Court of Appeal agreed with defendant that, under subdivision (f) of section 12022.53, it had to "strike all section 12022.53 enhancements imposed . . . in excess of one per crime" and impose "only the greatest enhancement" applicable under that section. The Court of Appeal also agreed with defendant that section 654 precludes imposition of *two* subdivision (d) enhancements—one for count 1 and one for count 5—based on *the single injury* to Barrera. Thus, the Court of Appeal concluded, with respect to count 5, the trial court properly imposed a subdivision (c) enhancement instead of a subdivision (d) enhancement. However, the Court of Appeal continued, subdivision (f) of section 12022.53 required the trial court to strike the impermissible subdivision (d) enhancement rather than stay it, "since the court also imposed a [subdivision (c) enhancement] on the same count." We then granted the People's petition for review.

## DISCUSSION

In their petition for review, the People challenged the Court of Appeal's holding that section 654 precludes imposition of separate subdivision (d) enhancements with respect to counts 1 and 5 for the single injury to Barrera. This holding necessarily implicates a threshold question: whether, section 654 aside, section 12022.53 itself calls for imposition of multiple subdivision (d)

enhancements based on a single injury. As explained, we conclude that section 12022.53 does call for imposition of multiple subdivision (d) enhancements and that section 654 does not prohibit this result.[2]

A. *Imposing Multiple Enhancements Based on a Single Injury Is Proper Under Section 12022.53.*

■ As with any question of statutory interpretation, in determining whether section 12022.53 calls for imposition of multiple subdivision (d) enhancements, we begin with the language of the statute. (*People v. Acosta* (2002) 29 Cal.4th 105, 112 [124 Cal.Rptr.2d 435, 52 P.3d 624].) In several respects, the language of section 12022.53 supports imposing multiple subdivision (d) enhancements under the circumstances here. First, by its terms, the subdivision (d) enhancement applies to "any person" who, "in the commission of" a specified felony, "personally and intentionally discharges a firearm and proximately causes great bodily injury . . . or death, *to any person other than an accomplice.*" (Italics added.) Based on the single injury to Barrera, the requirements of a subdivision (d) enhancement are met as to *each* of defendant's five attempted murder convictions, including those not involving the attempted murder of Barrera; attempted premeditated murder constitutes a specified offense (§ 12022.53, subd. (a)(1), (18)), and, in the commission of each offense, defendant "personally and intentionally discharge[d] a firearm and proximately cause[d] great bodily injury" to a person "other than an accomplice." (§ 12022.53, subd. (d).)

■ Notably, the parties here agree that the phrase, "any person other than an accomplice," does not mean "the victim" of the underlying crime. For example, defendant asserts in his brief that the elements of a subdivision (d) enhancement "require the imposition of the enhancement even if the injured person is not a victim of crime, such as if he or she was injured by a stray bullet." Thus, "[i]f there is a qualifying substantive offense, if a firearm is intentionally discharged, and if anyone (but an accomplice), i.e., either the victim or a nearby 'non-victim'—a person who is injured but is not the victim of an enumerated offense—suffers great bodily injury, the enhancement attaches to the offense." In other words, as defendant explains, "the 'any person other than an accomplice' language is sufficiently indisputable to ensure the imposition of the enhancement if a person other than the victim of the qualifying felony suffers a great bodily injury." This reading of the statute is consistent with our recent statement that, as "[a]pplied to a defendant/shooter, this enhancement is arguably unambiguous: a defendant who is convicted of a specified felony and is found to have intentionally and personally discharged a firearm proximately causing great bodily injury or

---

[2] At our request, the parties submitted supplemental briefing on the threshold question, which was not raised in the Court of Appeal.

death when committing that felony, is subject to section 12022.53, subdivision (d). [Citation.]" (*People v. Garcia* (2002) 28 Cal.4th 1166, 1173 [124 Cal.Rptr.2d 464, 52 P.3d 648].) It is also consistent with the fact that the Legislature knows how to limit enhancements to harm done to a "victim" when that is its intent. (See § 12022.8 [imposing enhanced punishment for "inflict[ing] great bodily injury . . . on any victim"]; see also *People v. Miller* (1977) 18 Cal.3d 873, 881, fn. 5 [135 Cal.Rptr. 654, 558 P.2d 552] [enhancement statute that "expressly provides for its application upon great bodily injury to a 'victim' rather than to a 'person' " does not apply "in the case of injury to persons who, unfortunately, are incidentally caught up in the events constituting the crime"].)

 Because the requirements of the subdivision (d) enhancement have been satisfied as to each of defendant's attempted murder convictions, subdivision (f) of section 12022.53 *requires* that the enhancement be imposed as to each conviction. That subdivision provides in part: "If more than one enhancement per person is found true under this section, the court *shall impose* upon that person the enhancement that provides the longest term of imprisonment." (§ 12022.53, subd. (f).) Defendant argues that we should limit the number of subdivision (d) enhancements imposed "to the same number of great bodily injuries inflicted," such that he should receive one subdivision (d) enhancement for injuring Barrera and one subdivision (c) enhancement as to each of his remaining attempted murder convictions. However, because the requirements of subdivision (d) have been met as to each conviction, defendant's solution contravenes the direction of section 12022.53, subdivision (f), that the court "shall impose upon that person the enhancement that provides the longest term of imprisonment." Had the Legislature wanted to limit the number of subdivision (d) enhancements imposed to the number of injuries inflicted, or had it not wanted subdivision (d) to serve as the enhancement applicable to each qualifying conviction where there is only one qualifying injury, it could have said so.

 In this regard, it is significant that the Legislature expressly included in section 12022.53 specific limitations on imposing multiple enhancements, but did not limit imposition of subdivision (d) enhancements based on the number of qualifying injuries. Section 12022.53, subdivision (f), provides in full: "Only one additional term of imprisonment under this section shall be imposed per person for each crime. If more than one enhancement per person is found true under this section, the court shall impose upon that person the enhancement that provides the longest term of imprisonment. An enhancement involving a firearm specified in Section 12021.5, 12022, 12022.3, 12022.4, 12022.5, or 12022.55 shall not be imposed on a person in addition to an enhancement imposed pursuant to this section. An enhancement for great bodily injury as defined in Section 12022.7, 12022.8, or 12022.9 shall not be imposed on a person in addition to an enhancement imposed pursuant

to subdivision (d)." ■ The enactment of this subdivision shows that the Legislature specifically considered the issue of multiple enhancements and chose to limit the number imposed only "for each crime," not for each transaction or occurrence and not based on the number of qualifying injuries. "Under the maxim of statutory construction, *expressio unius est exclusio alterius*, if exemptions are specified in a statute, we may not imply additional exemptions unless there is a clear legislative intent to the contrary. [Citation.]" (*Sierra Club v. State Bd. of Forestry* (1994) 7 Cal.4th 1215, 1230 [32 Cal.Rptr.2d 19, 876 P.2d 505].) Here, there is no evidence of a contrary legislative intent. Nor is there any reason to believe the Legislature simply overlooked the kind of factual scenario at issue here, which is not particularly unusual.

Defendant's construction also contravenes subdivision (h) of section 12022.53. That section provides that, "[n]otwithstanding Section 1385 or any other provision of law, the court shall not strike an allegation under this section or a finding bringing a person within the provisions of this section." (§ 12022.53, subd. (h).) Because the requirements of the subdivision (d) enhancement are met as to each of defendant's attempted murder convictions, imposing that enhancement with respect to only one conviction would, contrary to the command of section 12022.53, subdivision (h), effectively strike the subdivision (d) enhancement allegations and findings as to the remaining convictions.

■ In summary, the statutory provisions discussed above authorize and support imposition of multiple subdivision (d) enhancements under the circumstances here. Defendant cites, and we find, nothing in the statutory language supporting his contrary interpretation.

■ Although, as defendant notes, the legislative history of section 12022.53 does not directly address the issue here, it generally supports the conclusion that imposing multiple subdivision (d) enhancements is proper under the circumstances here. An uncodified section of the enacting legislation stated: "The Legislature finds and declares that *substantially longer prison sentences must be imposed* on felons who use firearms in the commission of their crimes, in order to protect our citizens and to deter violent crime." (Stats. 1997, ch. 503, § 1, italics added.) Several legislative reports explained that "[t]he purpose of [the statute] is to deter crimes in which a firearm is used and *to incapacitate those who use firearms in crimes*." (Sen. Com. on Pub. Safety, Analysis of Assem. Bill No. 4 (1997–1998 Reg. Sess.) as amended Apr. 28, 1997, italics added; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 4 (1997–1998 Reg. Sess.) as amended Sept. 10, 1997, italics added.) Another report explained: "According to the author [of the statute], 'For far too long,

criminals have been using guns to prey on their victims. [Section 12022.53] will keep these parasites where they belong . . . in jail! The problem is not guns, the problem is gun violence . . . criminals misusing guns to terrorize, injure and kill their victims. . . . With the Three Strikes law, the voters sent a clear message to criminals. With the 10-20-life provisions of [Section 12022.53], we are sending another clear message: If you use a gun to commit a crime, you're going to jail, and *you're staying there.*' " (Assem. Com. on Pub. Safety, Analysis of Assem. Bill No. 4 (1997–1998 Reg. Sess.) as amended Feb. 19, 1997, italics added.) Imposing multiple subdivision (d) enhancements under the circumstances here clearly serves these legislative goals.

Moreover, the evolution of section 12022.53 during the enactment process suggests that the Legislature did not intend to limit imposition of a subdivision (d) enhancement to the crime involving the person who was actually injured. As introduced, subdivision (d) applied to anyone who "discharges a firearm, intentionally or accidentally, which proximately causes bodily injury to *any other person*, in the commission of a [specified] felony." (Assem. Bill No. 4 (1997–1998 Reg. Sess.) as introduced Dec. 2, 1996, § 2, italics added.) Through amendment, section 12022.53, subdivision (d), was later made applicable to anyone who "in the commission of that felony intentionally and personally discharged a firearm and proximately caused great bodily injury, as defined in Section 12022.7, to any person other than an accomplice." (Sen. Amend. to Assem. Bill No. 4 (1997–1998 Reg. Sess.) Sept. 10, 1997, § 3.) Thus, regarding the injuries that would trigger the enhancement, although the Legislature narrowed the initially proposed, all-encompassing category—"any other person"—by excluding injuries to accomplices, it did not limit the category only to injuries to victims.

The legislative history discussed above supports the conclusion suggested by the statutory language itself: that section 12022.53 calls for imposition of multiple subdivision (d) enhancements under the circumstances here. Defendant cites, and we have found, nothing in the legislative history supporting his contrary conclusion.

Moreover, adopting defendant's construction would create several practical problems. In this case, it is easy to say, *in retrospect*, that defendant should receive one subdivision (d) enhancement with respect to the attempted murder of Barrera and subdivision (c) "discharge" enhancements with respect to the other attempted murder convictions. However, at the charging stage, the prosecution could not have known whether the jury would convict defendant of all of the crimes alleged or whether, as to the crime involving Barrera, it would convict defendant of some lesser offense that is not a qualifying offense. Given these possibilities, if the prosecution had been

permitted to allege the subdivision (d) enhancement only in connection with the crime involving Barrera, then notwithstanding defendant's infliction of great bodily injury using a gun, defendant could have avoided section 12022.53, subdivision (d), altogether, depending on the jury's decision regarding the attempted murder of Barrera. This result would unquestionably be contrary to the Legislature's intent. On the other hand, allowing the prosecution to allege the subdivision (d) enhancement as to all of the crimes, but requiring the court to make an adjustment after the jury returns its verdict, would be contrary to subdivision (h) of section 12022.53; as already noted, that subdivision provides that "[n]otwithstanding Section 1385 or any other provision of law, the court shall not strike an allegation under this section or a finding bringing a person within the provisions of this section." Moreover, even after the jury's verdict, we cannot know which convictions will survive appeal. If a subdivision (d) enhancement may be imposed with respect to only one conviction and that conviction is later overturned on appeal, then a defendant could potentially avoid section 12022.53, subdivision (d), altogether, notwithstanding his infliction of great bodily injury using a gun.

Another practical problem arises if the crime involving the injured person is not a qualifying crime but the other crimes are. As discussed above, it would be contrary to the clear statutory language and the Legislature's intent to hold that section 12022.53, subdivision (d), does not apply at all under these circumstances, and even defendant does not take this position. However, if, as defendant asserts, subdivision (d) may be applied to only one crime in this scenario, then as to which crime should the subdivision (d) enhancement be alleged? If the answer is, *all of them*, and the defendant is convicted of all counts, then to which conviction should the subdivision (d) enhancement attach? And, what happens if that conviction is reversed on appeal? And, what is the correct procedure where all counts are not tried together? We would have to read a great deal into the statute in order to address these practical problems, and the statute's failure to address any of these questions is yet another indication that the Legislature did not intend to preclude imposition of multiple subdivision (d) enhancements under the circumstances here.

Defendant argues that "anomalies could easily occur" if we conclude that section 12022.53 calls for "multiple enhancements" where only one person is injured. Specifically, he notes that under this construction of the statute, if a defendant shoots someone while attempting to rob a commercial establishment, then the number of subdivision (d) enhancements would fortuitously turn on the number of people in the store who could be considered robbery victims because they were "immediately present and in constructive possession of the intended loot."

Again, we find defendant's argument unpersuasive. Contrary to defendant's assertion, the consequence of our conclusion here—that the number of enhancements imposed may turn on the number of people present during a crime—is neither anomalous nor unique. Indeed, we have similarly construed section 12022.5, which prescribes an enhancement where a person "personally uses a firearm in the commission of a felony or attempted felony." In *In re Tameka C.* (2000) 22 Cal.4th 190, 198 [91 Cal.Rptr.2d 730, 990 P.2d 603] (*Tameka*), we held that multiple enhancements should be imposed under section 12022.5 where "a single shot results in offenses being committed against more than one victim and the presence of one of the victims is unknown to the perpetrator." We based our conclusion on "[t]he language" of the statute and "the intent of the Legislature in enacting" it. (*Tameka, supra,* at p. 196.) We also explained that "a person who engages in an urban gun battle is more culpable than one who fires a weapon at an isolated individual" because of the increased "risk of injury to bystanders." (*Ibid.*) As *Tameka* demonstrates, there is nothing anomalous about applying section 12022.53 in accordance with its language, such that the number of subdivision (d) enhancements imposed turns on the number of people defendant attempted to murder. Moreover, as the People note, a trial court can mitigate concerns about sentencing inequities by imposing concurrent, rather than consecutive, sentences where multiple subdivision (d) enhancements are found true. Thus, defendant's assertion regarding possible sentencing anomalies does not justify departing from the statutory language.

Defendant also argues that we should construe section 12022.53, subdivision (d), like section 12022.7, which, in language similar to section 12022.53, subdivision (d), provides an enhancement for anyone "who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony." (§ 12022.7, subd. (a).) According to defendant, "[n]o reported case has held that more [section 12022.7] enhancements than the actual number of injuries may be found and imposed" or that such an enhancement may be found and "imposed not only on [the conviction involving] the injured victim but also as to [the convictions involving] the uninjured victims as well." Defendant argues we should similarly interpret subdivision (d).

Defendant's argument is unpersuasive. Notwithstanding his assertions, defendant concedes that "[t]here is 'no intimation' in section 12022.7" that " 'only one such enhancement could be employed in any given case' " where only one person suffers injury. Moreover, defendant cites no case—and we have found none—supporting his construction of section 12022.7. On the other hand, as defendant notes, in *People v. Moringlane* (1982) 127 Cal.App.3d 811, 815–817 [179 Cal.Rptr. 726] (*Moringlane*), the trial court imposed three "bodily injury" enhancements, presumably under section 12022.7, based on the defendant's infliction of a single injury on one of the

three people he simultaneously assaulted.[3] Although the appellate court later held that multiple enhancements were improper, it based its decision on section 654, not on the construction of section 12022.7. (*Moringlane, supra,* 127 Cal.App.3d at pp. 817–819.) Moreover, given *Moringlane*'s holding in 1982 that section 654 bars imposition of multiple enhancements, it is not surprising that no reported case has considered whether section 12022.7 itself authorizes multiple enhancements under the circumstances here. Finally, defendant cites—and we find—nothing in the legislative history of section 12022.7 to support his interpretation of that statute. Because nothing supports defendant's construction of section 12022.7, his argument based on that construction fails.[4]

In making his argument, defendant relies on the fact that both section 12022.53, subdivision (d), and section 12022.7 use the phrase, "in the commission of" a felony. He asserts that this language in section 12022.7 "has not been utilized to encompass an injury to another person as being an 'injury' 'in the commission of a felony' as to an uninjured victim," and that it "should not be employed to permit the imposition of an enhancement onto the offense against an uninjured victim based on an injury to a contemporaneous victim." Similarly, he continues, "nothing in subdivision (d) . . . suggests that," under the circumstances here, "the injury to the injured victim has occurred 'in the commission' of the felony against the uninjured victim to permit a second 25-years-to-life rather than the determinate 20 years." "[I]n the instant case, it was only in the commission of one of the attempted murders that the discharge of a firearm proximately caused great bodily injury, i.e., the count involving the singularly injured victim."

Defendant's argument against imposing multiple subdivision (d) enhancements is unpersuasive.[5] The phrase, "in the commission of" a felony, cannot mean one thing when a subdivision (d) enhancement is not imposed with respect to a crime committed against the injured party (for whatever reason), and something else when a subdivision (d) enhancement is imposed with respect to such a crime (or with respect to a crime against any other uninjured

---

[3] Although the appellate court in *Moringlane* did not identify the statute that prescribed the bodily injury enhancements at issue, the length of the enhancements the trial court imposed there indicates that the relevant statute was section 12022.7. (*Moringlane, supra,* 127 Cal.App.3d at p. 816.) Defendant asserts that *Moringlane* involved section 12022.7.

[4] Although we reject defendant's reliance on section 12022.7, our holding in this case is limited to the construction of section 12022.53.

[5] Defendant's statements could be read as arguing more broadly that even where no subdivision (d) enhancement is imposed with respect to a conviction involving the injured party, a subdivision (d) enhancement may not be imposed with respect to a conviction involving an uninjured victim, because an injury to some third person never occurs "in the commission of" a qualifying crime against an uninjured victim. However, other statements in defendant's brief clarify that his argument addresses only the imposition of *multiple* subdivision (d) enhancements.

victim). That is, whether an injury to a third person occurs "in the commission of" a qualifying crime committed against an uninjured victim does not depend on whether a subdivision (d) enhancement is imposed with respect to a crime committed against anyone else (either the injured victim or another uninjured victim). Thus, defendant's focus on the statutory phrase, "in the commission of," is unavailing.

Based on the preceding analysis, we hold that section 12022.53 calls for multiple subdivision (d) enhancements under the circumstances here.

### B. *Section 654 Does Not Preclude Imposing Multiple Subdivision (d) Enhancements.*

Subdivision (a) of section 654 provides that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." This provision "protects against multiple punishment, not multiple conviction. [Citation.]" (*People v. Harrison* (1989) 48 Cal.3d 321, 335 [256 Cal.Rptr. 401, 768 P.2d 1078].) Although it "literally applies only where such punishment arises out of multiple statutory violations produced by the 'same act or omission,' " we have extended its protection "to cases in which there are several offenses committed during 'a course of conduct deemed to be indivisible in time.' [Citation.]" (*Ibid.*)

Defendant argues that, under section 654, his single act of injuring Barrera may not be the basis for imposing multiple subdivision (d) enhancements. As previously noted, the Court of Appeal agreed with defendant. Finding "no language expressly authorizing multiple punishment for identical . . . subdivision (d) enhancements," the court concluded that "the Legislature did not intend to create an exception to section 654 when applying the identical [great bodily injury] enhancement under section 12022.53, subdivision (d) to separate underlying crimes."

In support of a contrary conclusion, the People advance several arguments. They argue generally that section 654's prohibition against multiple punishment "simply . . . does not apply to enhancements." More specifically, they argue that "the express language of section 12022.53 . . . create[s] a broad exception to" section 654's prohibition, and that "the legislative history and the policies behind section 12022.53 also support this conclusion." Finally, they argue that "even if section 12022.53 did not create an exception to the *multiple punishment ban* of section 654, certainly nothing in section 12022.53 overcomes the long-recognized, judicially-created exception for cases involving multiple victims of violent crime."

■ The People's last argument is dispositive. We have long held that "the limitations of section 654 do not apply to crimes of violence against multiple victims." (*People v. King* (1993) 5 Cal.4th 59, 78 [19 Cal.Rptr.2d 233, 851 P.2d 27] (*King*).) As we have explained: "The purpose of the protection against multiple punishment is to insure that the defendant's punishment will be commensurate with his criminal liability. A defendant who commits an act of violence with the intent to harm more than one person or by a means likely to cause harm to several persons is more culpable than a defendant who harms only one person. For example, a defendant who chooses a means of murder that places a planeload of passengers in danger, or results in injury to many persons, is properly subject to greater punishment than a defendant who chooses a means that harms only a single person. This distinction between an act of violence against the person that violates more than one statute and such an act that harms more than one person is well settled. Section 654 is not '. . . applicable where . . . one act has two results each of which is an act of violence against the person of a separate individual.' [Citations.]" (*Neal v. State of California* (1960) 55 Cal.2d 11, 20–21 [9 Cal.Rptr. 607, 357 P.2d 839].) Attempted premeditated murder qualifies as a crime of violence for purposes of applying this "multiple victim" exception. (*Ibid.*; *People v. Carter* (1995) 41 Cal.App.4th 683, 689 [48 Cal.Rptr.2d 726], disapproved on another ground in *People v. Deloza* (1998) 18 Cal.4th 585 [76 Cal.Rptr.2d 255, 957 P.2d 945].)

In resolving the issue before us, our application of the "multiple victim" exception in *King* is particularly instructive. There, after shooting two people while robbing a store, the defendant pleaded guilty to first degree murder and attempted premeditated murder. (*King, supra,* 5 Cal.4th at p. 63.) At sentencing, the trial court imposed two enhancements—one for each conviction—under section 12022.5, which then prescribed a sentence enhancement for someone who personally used a firearm in the commission or attempted commission of a felony. (*King, supra,* 5 Cal.4th at pp. 63–64.) On appeal, the court struck the section 12022.5 enhancement imposed for the attempted murder conviction "under compulsion of" our decision in *In re Culbreth* (1976) 17 Cal.3d 330 [130 Cal.Rptr. 719, 551 P.2d 23] (*Culbreth*). (*King, supra,* 5 Cal.4th at p. 64.) *Culbreth* had construed section 12022.5 as permitting only one enhancement, "even if there are multiple counts involving multiple victims of violent crime, . . . 'if all the charged offenses are incident to one objective and effectively comprise an indivisible transaction . . . .' [Citation.]" (*King, supra,* 5 Cal.4th at p. 63.) In *King*, we overruled *Culbreth*, finding that its construction "finds no support in the statutory language." (*King, supra,* 5 Cal.4th at p. 77.) As relevant here, we also explained: "To the extent [the] defendant contends that [section 654's] prohibition against multiple punishment mandates the *Culbreth* rule, we note . . . that . . . section 654 does not apply to 'crimes of violence against

multiple victims.' [Citations.] Here, there were multiple victims. . . . [¶] . . . [S]ection 12022.5 simply enhances the term to be imposed for an offense; when multiple terms are imposed for multiple offenses, . . . section 654 exists to limit the number of terms which may be executed. However, as noted, . . . the limitations of section 654 do not apply to crimes of violence against multiple victims. The *Culbreth* decision does not justify a conclusion that the Legislature intended that a term enhancement be treated more restrictively for multiple punishment purposes than the term for the underlying offense." (*King, supra,* 5 Cal.4th at p. 78.) Thus, we held that where a defendant commits crimes of violence against multiple victims, section 654 permits imposition of "a firearm-use enhancement under section 12022.5 . . . for each separate offense for which the enhancement is found true." (*King, supra,* 5 Cal.4th at p. 79.)

In *Tameka,* we applied *King* to affirm invocation of multiple section 12022.5 enhancements *based on a single gunshot.* In *Tameka,* the defendant fired a single shot at three police officers, missing the officers and striking glass in the door of a nearby hotel. (*Tameka, supra,* 22 Cal.4th at p. 192.) The glass shattered and struck the eye of a child who was inside the hotel. (*Ibid.*) In a juvenile wardship proceeding, the court found that by his single shot, the defendant committed four separate assaults with a firearm, one against each officer and one against the child. (*Ibid.*) Based on the defendant's single use of the firearm, the court also found that as to each crime, the defendant qualified for an enhancement under section 12022.5. (*Tameka, supra,* 22 Cal.4th at p. 192.) In calculating the defendant's maximum period of confinement with the California Youth Authority, the court included a section 12022.5 enhancement for the assault on one of the officers and a consecutive section 12022.5 enhancement for the assault on the child (reduced pursuant to section 1170.1, subdivision (a)). (*Tameka, supra,* 22 Cal.4th at pp. 192–193.) On appeal, the defendant argued that the juvenile court should not have included a second section 12022.5 enhancement in the sentence calculation. (*Tameka, supra,* 22 Cal.4th at p. 193.)

In *Tameka,* we affirmed the juvenile court's sentence calculation based on *King.* We first noted *King*'s holding that "multiple firearm-use enhancements may be imposed pursuant to section 12022.5, subdivision (a), when the defendant uses a firearm in a single, indivisible transaction that results in injury to multiple victims. [Citation.]" (*Tameka, supra,* 22 Cal.4th at p. 193.) We next rejected the argument that *King,* which involved a defendant who fired several shots and injured two people, is inapplicable where only "a single shot facilitates the commission of more than one felony . . . ." (*Tameka, supra,* 22 Cal.4th at p. 200.) "As we explained in *King,*" under the language of section 12022.5, subdivision (a), "the sentencing court is not limited to imposing one enhancement per occasion of firearm use, but rather is to impose one enhancement *for each felony in which a firearm has been*

*used. . . .* [¶] Under the *King* rationale, a robber who enters a convenience store and obtains the valuables of seven patrons with a single display of a firearm has committed seven robberies, and each felony is subject to enhancement for use of a firearm. Keeping in mind both the effect on the victims and the culpability of the defendant, we see no distinction between this situation and one in which a defendant commits multiple assaults with a single shot from a firearm." (*Tameka, supra,* 22 Cal.4th at pp. 195–196, italics added.) Finally, we explained that our conclusion was consistent with "the law" that permits imposition of separate punishment for each "*substantive* offense." (*Id.* at p. 199.) That law, which "recognize[s] that the number of victims exposed to the use of a firearm is relevant to the defendant's culpability [citations]" (*id.* at p. 200), justified "the juvenile court's having sustained the allegations of four assaults with a deadly weapon on the basis of what may have been only one shot . . . . The use enhancements simply follow from the allegations having been sustained as to the substantive offenses of assault with a firearm." (*Id.* at p. 196.) They "do not constitute separate crimes or offenses, but simply are the basis for the imposition of additional punishment for the underlying substantive offense. [Citation.]" (*Id.* at pp. 198–199.) Thus, we held, "[w]hen a defendant commits an assault with a firearm upon an intended victim, and with the same shot injures an unintended victim, thereby committing another assault," his "sentence for each assault [may] be enhanced by a separate firearm-use enhancement" under section 12022.5, subdivision (a). (*Tameka, supra,* 22 Cal.4th at p. 191.)

Although we did not specifically mention section 654 in *Tameka,* our reasoning there makes clear that section 654 principles informed our conclusion that the defendant's single gunshot justified invoking multiple firearm-use enhancements under section 12022.5. As noted above, in reaching our conclusion, we relied on "the law" that permitted imposition of separate punishment for each separate assault the defendant committed against a different victim by his single act. (*Tameka, supra,* 22 Cal.4th at p. 199.) The only law to which we could have been referring is the "multiple victim" exception to section 654. Moreover, in noting prior judicial "recogni[tion] that the number of victims exposed to the use of a firearm is relevant to the defendant's culpability," we cited *King* and *People v. Alvarez* (1992) 9 Cal.App.4th 121 [11 Cal.Rptr.2d 463]. (*Tameka, supra,* 22 Cal.4th at p. 200.) The cited passages from these decisions discuss the "multiple victim" exception to section 654. (*King, supra,* 5 Cal.4th at p. 78; *Alvarez, supra,* 9 Cal.App.4th at p. 128.) Thus, implicit in *Tameka*'s holding is our conclusion that section 654 does not preclude imposition of multiple enhancements for a single firearm use involving multiple victims.[6]

---

[6] Moreover, as the People note, *Tameka*'s holding "would have little utility if [it] were limited to recognizing that multiple enhancements could be imposed under section[] . . .

 Following *Tameka* and *King,* we conclude that section 654 does not preclude imposition of multiple subdivision (d) enhancements based on the single injury to Barrera. Under the "multiple victim" exception to section 654, defendant may be punished for each of the attempted murder offenses he committed when he fired at the NSO group. The subdivision (d) enhancements "simply follow from" his convictions on those "substantive offenses." (*Tameka, supra,* 22 Cal.4th at p. 196.) They "do not constitute separate crimes or offenses, but simply are the basis for the imposition of additional punishment for the underlying substantive offense. [Citation.]" (*Id.* at pp. 198–199; see also *People v. Mason* (2002) 96 Cal.App.4th 1, 15 [115 Cal.Rptr.2d 359] [enhancements under section 12022.53 "cannot exist independently of the [substantive] counts to which they [are] appended"].) Nothing in section 12022.53 or its legislative history suggests that the Legislature intended to alter operation of the "multiple victim" exception to section 654, i.e., to treat a term enhancement "more restrictively for multiple punishment purposes than the term for the underlying offense." (*King, supra,* 5 Cal.4th at p. 78.) On the contrary, by its express terms, the subdivision (d) enhancement applies "[n]otwithstanding any other provision of law" to anyone who "in the commission of" a listed felony "personally and intentionally discharges a firearm and proximately causes great bodily injury . . . or death, *to any person* other than an accomplice." (§ 12022.53, subd. (d), italics added.) Moreover, as previously explained, although section 12022.53 expressly limits the number of enhancements that may be imposed under the section "for each crime" (§ 12022.53, subd. (f)), it contains no language limiting the number of enhancements that may be imposed under the section for separate crimes against multiple victims. Given that the "multiple victim" exception and our decision in *King* predated passage of section 12022.53 in 1997, the Legislature would have no doubt included such limiting language had it intended to preclude imposition of multiple enhancements where there are multiple victims. Moreover, given these same considerations, the Court of Appeal erred in basing its conclusion on the absence of "language expressly authorizing multiple punishment for identical . . . subdivision (d) enhancements." Thus, the Court of Appeal also erred in concluding that section 654 precludes imposition of a subdivision (d) enhancement with respect to both counts 1 and 5.[7]

Defendant argues that *Tameka* and *King* are "inapposite" because they involved section 12022.5 enhancements for "firearm *use,*" rather than subdivision (d) enhancements for "proximately caused *injury.*" According to

---

12022.5, but that these enhancements must thereafter be stayed under section 654." (Fn. omitted.)

[7] Given our conclusion based on the "multiple victim" exception, we need not address the People's argument that section 654 does not apply to enhancements, or that the language of section 12022.53 independently creates an exception to section 654.

defendant, because "[t]he gravamen of section 12022.5 is firearm *use*," imposition of multiple enhancements under that section "is understandable; the firearm is indeed actually and directly *being used* as to each person." By contrast, defendant asserts, because "the gravamen for section 12022.53, subdivision (d) is *injury*," where but "a single injury" occurs, one subdivision (d) enhancement of 25 years to life is appropriate. Based on this distinction, defendant argues that rather than follow *King* and *Tameka*, we should follow decisions involving other enhancements for infliction of bodily injury, principally *Moringlane*. There, as here relevant, the defendant fired several shots at a vehicle he was pursuing, missed the vehicle, and hit a child riding in another vehicle. (*Moringlane, supra*, 127 Cal.App.3d at pp. 815–816.) The court held that although the defendant could be punished for three counts of assault with attempt to commit murder, section 654 "prohibit[ed] the imposition of multiple [bodily injury] enhancements" under section 12022.7 "for the single" injury to the child. (*Moringlane, supra*, 127 Cal.App.3d at p. 817.)

For several reasons, defendant's argument fails. First, *Moringlane* expressly rejected the very distinction underlying defendant's argument that *King* and *Tameka* are inapposite: that, for purposes of applying section 654, infliction of bodily injury and gun use are different. In reaching its conclusion, the *Moringlane* court noted that "all" of the "controlling" Court of Appeal decisions "dealt with multiple enhancements based on firearm 'use' or 'armed' allegations" rather than infliction of bodily injury, but found "no meaningful distinction from that fact so far as the application of . . . section 654 is concerned." (*Moringlane, supra*, 127 Cal.App.3d at p. 819.) In this regard, *Moringlane supports* application of *King* and *Tameka* here. Second, in construing section 654, *Moringlane* relied heavily on *Culbreth*. (*Moringlane, supra*, 127 Cal.App.3d at pp. 817, 819.) However, as we explained in *King*, *Culbreth* "was solely an interpretation of . . . section 12022.5," and "was not based on . . . section 654." (*King, supra*, 5 Cal.4th at p. 78.) Thus, *Moringlane*'s analysis is flawed insofar as its application of section 654 rested on *Culbreth*. Moreover, as previously noted, *King* overruled *Culbreth* and held that section 654 does not preclude imposition of multiple enhancements under section 12022.5. (*King, supra*, 5 Cal.4th at pp. 77–78.) As also previously noted, in *Tameka* we extended *King* to affirm invocation of multiple section 12022.5 enhancements *based on a single gunshot*. (*Tameka, supra*, 22 Cal.4th at pp. 191–196.) Thus, *Moringlane*'s section 654 analysis is inconsistent with our subsequent decisions in *King* and *Tameka* and it hinges on a decision we later overruled (and which, in any event, did not apply section 654).[8] Finally, like the Court of Appeal here, *Moringlane* did not even

---

[8] *Moringlane* also relied on several Court of Appeal decisions holding that section 654 precludes imposition of multiple gun use enhancements under section 12022.5. (*Moringlane, supra*, 127 Cal.App.3d at p. 818, citing *People v. Bush* (1975) 50 Cal.App.3d 168, 178 [123 Cal.Rptr. 576]; *People v. Lowe* (1975) 45 Cal.App.3d 792, 796 [119 Cal.Rptr. 699]; *People v.*

consider whether imposition of multiple enhancements is permissible under the "multiple victim" exception. For all of these reasons, defendant's reliance on *Moringlane* is unavailing.[9]

Defendant's remaining arguments in support of the Court of Appeal's decision are also unpersuasive. Based on the language of section 12022.53, subsequent legislative developments and policy considerations, defendant argues that the Legislature did not intend to exempt section 12022.53 from the normal operation of section 654. Defendant's argument fails because it completely ignores the long-standing rule that the "multiple victim" exception is part of section 654's normal operation. Indeed, as the People observe, "what is most notable about [defendant's] brief is what [it] omits. Not once does [it] mention the exception to section 654 for cases involving multiple victims of violent crime." (Italics omitted.) Thus, even were defendant correct that the Legislature did not exempt section 12022.53 from section 654's normal operation, the "multiple victim" exception to section 654 permits imposition of multiple subdivision (d) enhancements under the facts here. Defendant also invokes the so-called rule of lenity, which "compels courts to resolve true statutory ambiguities in a defendant's favor . . . ." (*People v. Anderson* (2002) 28 Cal.4th 767, 780 [122 Cal.Rptr.2d 587, 50 P.3d 368].) However, that rule applies "only if two reasonable interpretations of the statute stand in relative equipoise." (*Ibid.*) Because, for the reasons already stated, defendant's interpretation is not equally reasonable, the rule of lenity is inapplicable. Thus, we hold that imposition of a subdivision (d) enhancement is permissible here with respect to both counts 1 and 5. The trial court's improper stay, pursuant to section 654, of the subdivision (d) enhancement imposed with respect to count 5 resulted in an unauthorized sentence and requires that we remand for resentencing.[10] (See *People v. Scott* (1994) 9

*Johnson* (1974) 38 Cal.App.3d 1, 11–12 [112 Cal.Rptr. 834].) Like *Moringlane*, those Court of Appeal decisions are inconsistent with our subsequent decisions in *King* and *Tameka*, which also involved section 12022.5. *Moringlane* also relied on our decision in *People v. Miller*, *supra*, 18 Cal.3d 873. (*Moringlane*, *supra*, 127 Cal.App.3d at pp. 817, 819.) Insofar as *Miller* followed *Culbreth* in holding that section 12022.5 precludes imposition of multiple enhancements for a single gun use against multiple victims (*Miller*, *supra*, 18 Cal.3d at p. 887), it is irrelevant to application of section 654 and was implicitly overruled in *King*. Insofar as *Miller* applied section 654, it is consistent with the principle that section 654 does not prohibit multiple punishment where, by a single act, a defendant "commit[s] crimes of violence against different victims. [Citations.]" (*Miller*, 18 Cal.3d at p. 885.)

[9] *People v. Reeves* (2001) 91 Cal.App.4th 14, 56–57 [109 Cal.Rptr.2d 728], which defendant also cites and which quoted *Moringlane*, is inapposite because it involved a single victim.

[10] In a footnote, defendant also asserts that if section 654 "does not proscribe multiple punishment for a single injury," then the resulting sentence would constitute "unconstitutional, disproportionate punishment" under the United States and California Constitutions. Because defendant "does not expand on the issue with either argument or citation to relevant authority," we decline to address it. (*People v. Hardy* (1992) 2 Cal.4th 86, 150 [5 Cal.Rptr.2d 796, 825 P.2d 781].) Moreover, given our conclusion that a subdivision (d) enhancement is appropriate

Cal.4th 331, 354, fn. 17 [36 Cal.Rptr.2d 627, 885 P.2d 1040]; *People v. Perez* (1979) 23 Cal.3d 545, 549–555 [153 Cal.Rptr. 40, 591 P.2d 63].)

### DISPOSITION

The judgment of the Court of Appeal is reversed, and the case is remanded to that court for further proceedings consistent with this opinion, including remanding to the trial court for resentencing in accordance with the views expressed in this opinion.

George, C. J., Baxter, J., and Brown, J., concurred.

**WERDEGAR, J.,** Concurring.—I concur in the result reached by the majority and in its conclusion that Penal Code section 12022.53,[1] as written, allows imposition of more than one 25-year-to-life prison term enhancement for a single injury caused by use of a firearm. But unlike the majority, I believe the statute's failure to conform punishment to culpability in this respect is likely the result of oversight rather than legislative intent. Rather than multiple life-term enhancements under section 12022.53, subdivision (d), both common sense and the overall scheme of the 10-20-life law suggest an assailant who shoots in the direction of several people, but injures only one of them, should receive only *one* 25-year-to-life enhancement for injuring one victim—while also being severely punished with multiple 20-year enhancements under section 12022.53, subdivision (c), for discharging a firearm in the commission of offenses against the remaining, uninjured victims. Nevertheless, I agree with the majority that no such restriction appears in the terms of section 12022.53 and that absent such an express limitation a trial court must impose as to each qualifying felony, and cannot strike, the longest section 12022.53 enhancement pleaded by the prosecution and found true by the trier of fact. (§ 12022.53, subds. (f), (h).)

In section 12022.53, the Legislature fashioned a carefully calibrated, if severe, system of additional penalties for use of a firearm in the commission of specified offenses. Simple use of a firearm, even if not operable or loaded, results in an additional term of 10 years in prison. (*Id.*, subd. (b).) If the defendant is found to have personally and intentionally discharged the firearm in commission of the offense, the enhancement is increased to 20 years. (*Id.*, subd. (c).) Finally, if the shooting causes great bodily injury to anyone other than an accomplice in the crime, the statute imposes an extraordinary enhancement of 25 years to life in prison. (*Id.*, subd. (d).) Under subdivision

---

with respect to both counts 1 and 5, we also need not consider defendant's request that we apply section 1170.1 to reduce the subdivision (c) enhancement the trial court imposed on count 5 from 20 years to six years eight months.

[1] All further statutory references are to the Penal Code.

(f) of the statute, "[o]nly one additional term of imprisonment under this section shall be imposed per person for each crime," and if more than one enhancement is found true under the statute, the court shall impose the enhancement that provides the longest term of imprisonment. No other enhancement for firearm use or great bodily injury may also be imposed on the same count.

Section 12022.53's graduated penalties (subds. (b)–(d)) and the limitation of one enhancement per person per crime (subd. (f)) suggest section 12022.53 enhancements were intended to correlate fairly closely with culpability. The interpretation we give the statute today—under which an injury to only one person may give rise to as many subdivision (d)"great bodily injury" enhancements as there were victims of all the underlying offenses—does not serve this purpose well. In the present case, for example, defendant's punishment would best reflect his culpability were he to receive one subdivision (d) enhancement, for shooting and injuring victim Barrera, and one subdivision (c) enhancement, for firing his gun, as to each of the remaining attempted murders for which he was properly convicted.

By reserving section 12022.53's most severe punishment for a defendant found to have *injured* another by firing a gun, the Legislature clearly invoked the intuitive principle that appropriate punishment is to be measured in part by the harm the actor causes.[2] Our holding today, that the "number of subdivision (d) enhancements imposed turns on the number of people defendant attempted to murder" (maj. opn., *ante*, at p. 1060), rather than the number he actually injured, is not fully consistent with this principle. That defendant shot in the direction of and thereby endangered several victims certainly makes his offense worse than that of an assailant who shoots at only a single victim. But that increased culpability would be fully punished by the additional attempted murder convictions and their appurtenant 20-year enhancements for defendant having discharged his weapon in commission of the attempted murders (§ 12022.53, subd. (c)). Under the court's statutory reading today, defendant is treated the same as an assailant who shoots in the direction of, *and hits*, several victims, a result I do not believe the Legislature, in enacting section 12022.53's graduated series of penalties, intended.

The drafters of section 12022.53, subdivision (d), however, did not limit its application to qualifying offenses involving great bodily injury to the *victim* of the underlying offense, but, rather, offenses in the commission of which the

---

[2] Though this "harm doctrine" has been called rationally indefensible (Kadish, *Foreword: The Criminal Law and the Luck of the Draw* (1994) 84 J. Crim. L. & Criminology 679, 684–695), it nonetheless enjoys "near universal acceptance in Western law" (*id.* at p. 679) and continues to inform our sense of criminal justice. (See, e.g., *Payne v. Tennessee* (1991) 501 U.S. 808, 819–825 [115 L.Ed.2d 720, 111 S.Ct. 2597].)

defendant causes great bodily injury to "any person other than an accomplice." Moreover, there may be circumstances—as when a qualifying offense has been committed against an uninjured victim but not the injured victim—in which imposing a subdivision (d) enhancement for injury to someone other than the victim of the underlying crime will best fit the punishment to the crime. The majority is thus probably correct that subdivision (d)'s specification that the injurious discharge of a firearm must have occurred "in the commission of" the underlying qualifying felony was not intended to limit enhancements to cases where the victim in that felony sustained great bodily injury. Nor does any other language in the statute clearly limit the number of subdivision (d) enhancements that may be imposed based on a single gunfire injury.

For the reasons explained above, I suspect section 12022.53 was not meant to authorize imposition of multiple 25-year-to-life enhancements for a single instance of great bodily injury. For whatever reason, however, the Legislature failed to include any clear limitation to this effect in the statute. In such cases, this court is powerless to rewrite the law but must depend on the Legislature to clarify its intent.

Kennard, J., and Moreno, J., concurred.

Appellant's petition for a rehearing was denied July 14, 2004.