Filed 3/18/21  P. v. Lopez CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F077693 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. F17905818) |
| CEASAR WILLIAM LOPEZ, | **OPINION** |
| Defendant and Appellant. | |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  Timothy A. Kams, Judge.

Eric E. Reynolds, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Clara M. Levers, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Peña, Acting P.J., Smith, J. and DeSantos, J.

Defendant Ceasar William Lopez stands convicted of making criminal threats, resisting an executive officer by threats or violence, and resisting a peace officer. On appeal, he contends (1) the matter should be remanded for the trial court to assess his eligibility for participation in the mental health diversion program and (2) the trial court should have stayed the sentence on the resisting a peace officer conviction pursuant to Penal Code section 654.[1] In supplemental briefing, the parties agree that defendant's one-year prior prison term enhancement should be stricken pursuant to section 667.5, subdivision (b), as amended by Senate Bill No. 136 (2019–2020 Reg. Sess.) (Senate Bill 136). We conditionally reverse the judgment, strike the prior prison term enhancement, and remand to the trial court for further proceedings.

## PROCEDURAL SUMMARY

On February 23, 2018, the Fresno County District Attorney filed an information charging defendant with making criminal threats (§ 422; count 1), resisting an executive officer by threats or violence (§ 69; count 2), and resisting a peace officer (§ 148, subd. (a)(1); count 3). The information further alleged that defendant had suffered a prior felony "strike" conviction within the meaning of the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)) and had served five prior prison terms (§ 667.5, subd. (b)).

On May 4, 2018, the jury found defendant guilty on all counts.

On May 7, 2018, in a bifurcated hearing, the trial court found true that defendant had suffered a prior strike conviction and had served five prior prison terms. The prior prison terms found true were served for convictions of receiving stolen property (§ 496, subd. (a)), burglary (§ 459), petty theft (§ 666), driving under the influence of alcohol (Veh. Code, § 23153, subd. (a)), resisting an executive officer (§ 69), dissuading a witness (§ 136.1, subd. (c)(1)), and committing domestic violence (§ 273.5, subd. (a)).

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

On June 21, 2018, the trial court declined to strike defendant's prior strike conviction pursuant to section 1385, subdivision (a) and *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497. On the same day, the court sentenced defendant to eight years four months in prison as follows: on count 1, six years (the upper term of three years doubled due to the prior strike); on count 2, one year four months (one-third of the middle term of two years doubled due to the prior strike) consecutive to the sentence on count 1; and on count 3, 365 days in jail, concurrent with the sentence on count 1. The trial court also imposed a one-year prior prison term enhancement based on defendant's first prison term for convictions of receiving stolen property, burglary, and petty theft.

On the same day, defendant filed a notice of appeal.

## FACTUAL SUMMARY

### *Prosecution Case*

On October 2, 2017, Yadira G. and her husband Armando L. were defendant's next-door neighbors. Yadira and Armando returned home at about 9:00 p.m. or 10:00 p.m. They went to their backyard to feed their dog, gather the laundry and take out the garbage. Armando noticed that defendant was in defendant's backyard. As they returned to the house, defendant directed a flashlight at Armando. Armando believed that defendant wanted to talk so he and Yadira approached the chain link fence that separated their properties. Defendant also approached the fence. Defendant said to Armando, " 'Hey, you f***ing a**hole …. I'll kill you.' " He then said several times, either "If you don't step in, I'm going to kill [Armando]" or "[G]o inside or I'll kill your dog or [Armando]." [2] Defendant then attempted to jump over the fence. Armando and Yadira then went into their house and Yadira called 911.

---

[2] Armando spoke and understood little English. Yadira spoke and understood more English than Armando. Defendant spoke to Armando in English and Yadira translated part of defendant's statement to him.

3.

Fresno Police Officers Yessie Hernandez and Jason Laird responded to the 911 call. Yadira told Hernandez about defendant's threats. The officers then contacted defendant's brother who told them defendant was not home. As the officers spoke with defendant's brother, Hernandez noticed defendant standing near the carport to defendant's home. Hernandez directed his flashlight at defendant and defendant became confrontational. Hernandez commanded defendant to get on the ground. Defendant approached Laird quickly, kicked a bucket of water at him, and wrapped a belt around his fist. Hernandez believed defendant intended to use the belt to fight Laird. Laird drew his taser and commanded defendant to get on the ground. Defendant then took his shirt off and told the officers to " '[g]et the f*** out of [his] yard.' " He then faced Laird and turned his back to Hernandez. Hernandez tackled defendant and attempted to place him in handcuffs. Defendant resisted Hernandez, grabbing and pulling his vest and attempting to bite his face. During the struggle Hernandez's shin was injured and his radio and body camera were broken as defendant kicked and flailed his arms.

Soon after the struggle between defendant and Hernandez began, Laird and other officers helped Hernandez subdue defendant. Defendant was then handcuffed. Hernandez conducted an in-field identification. Yadira identified defendant as the assailant.

### Defense Case

Hernandez was asked about one of Armando's statements to law enforcement during an interview. Armando told Hernandez and Laird that defendant told him that "he wanted to kill the dog .…" Armando also told Hernandez that he did not hear defendant's threats, but Yadira told him defendant wanted to kill him. Hernandez understood that defendant told Armando that he wanted to kill Armando, Yadira, and their dog.

4.

Margarita Reyes was a defense investigator. She interviewed Yadira at her place of work. Yadira said that she reported that defendant was disrespectful, but she did not seem afraid of him.

## DISCUSSION

### A. Mental Health Diversion

Defendant contends this action must be remanded for the trial court to determine his eligibility for mental health diversion. We agree.

Defendant was sentenced on June 21, 2018. Six days later, section 1001.36 became effective, creating a diversion program for defendants who suffer from medically recognized mental disorders, "including, but not limited to, bipolar disorder, schizophrenia, schizoaffective disorder, or post-traumatic stress disorder .…"[3] (§ 1001.36, subd. (b)(1)(A); Stats. 2018, ch. 34, §§ 24, 37.) Section 1001.36 applies retroactively to all cases not yet final on appeal on its effective date. (*People v. Frahs* (2020) 9 Cal.5th 618, 632–637.) Conditional limited remand for the trial court to consider a defendant's eligibility for diversion is warranted when "the record affirmatively discloses that the defendant appears to meet at least the first threshold eligibility requirement for mental health diversion—the defendant suffers from a qualifying mental disorder (§ 1001.36, subd. (b)(1)(A))." (*Frahs*, at p. 640.)

As defendant correctly notes, the record—specifically, defendant's statement of mitigation—contains evidence tending to indicate he suffered from bipolar disorder and schizophrenia, both qualifying mental disorders. Defendant's judgment of conviction

---

**3**     In addition to requiring that a defendant be diagnosed with a qualifying mental disorder, for a defendant to be eligible for mental health diversion: the court must conclude the mental disorder played a significant role in the commission of the charged offense; a mental health expert must opine the defendant's symptoms of the mental disorder will respond to treatment; the defendant must consent to diversion and waive the right to a speedy trial; the defendant must agree to comply with treatment; and the trial court must be satisfied defendant will not pose an unreasonable risk of danger to public safety. (§ 1001.36, subd. (b).)

was not final on the effective date of section 1001.36. Therefore, we conditionally reverse defendant's conviction and remand for the trial court to determine defendant's eligibility for mental health diversion.

## B. Section 654

Defendant was sentenced to 16 months for resisting an executive officer by threats or violence on count 2 (to run consecutively to the sentence on count 1) and 365 days for resisting a peace officer on count 3 (to run concurrently with the sentence on count 1). Defendant contends the trial court erred in failing to stay the term on count 3. The People disagree; they argue "[s]ection 654 does not apply … because appellant had separate criminal objectives, which he renewed through multiple acts of violence, that were directed at multiple victims." We agree with the People.

Section 654, subdivision (a) provides that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." The inquiry to determine whether separate sentences can be imposed pursuant to section 654 is "[w]hether a course of criminal conduct is divisible and therefore gives rise to more than one act." (*Neal v. State of California* (1960) 55 Cal.2d 11, 19; *People v. Correa* (2012) 54 Cal.4th 331, 335–336.) That inquiry turns on "the intent and objective" of the defendant. (*Correa*, at p. 336.) " 'If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' " (*Ibid.*) "In such a case, the proper procedure is to stay execution of sentence on one of the offenses." (*People v. Monarrez* (1998) 66 Cal.App.4th 710, 713.)

However, "section 654 does not prohibit multiple punishments where the defendant's … conduct results in crimes of violence against multiple victims." (*People v. Cardenas* (2015) 239 Cal.App.4th 220, 230; accord, *People v. Oats* (2004) 32 Cal.4th 1048, 1063.) "Under the multiple victim exception, ' " 'even [if] a defendant entertains

6.

but a single principal objective during an indivisible course of conduct, he [or she] may be convicted and punished for each crime of violence committed against a different victim.' " ' " (*Cardenas*, at p. 230.) Crimes that do not contain violence as an element are still considered crimes of violence for purposes of section 654 if the defendant committed the crime in a violent manner. (See *Ibid*. ["Burglary may also be treated as a crime of violence when the defendant personally used a firearm in committing the offense."]; *People v. Centers* (1999) 73 Cal.App.4th 84, 100.)

"The question of whether section 654 is factually applicable to a given series of offenses is for the trial court, and the law gives the trial court broad latitude in making this determination. [Citation.] Its findings on this question must be upheld on appeal if there is any substantial evidence to support them." (*People v. DeVaughn* (2014) 227 Cal.App.4th 1092, 1113.) " ' "We must 'view the evidence in a light most favorable to the respondent and presume in support of the [sentencing] order the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]' " ' " (*Ibid*.)

Here, viewing the record in the light most favorable to the conviction, when defendant first encountered the officers, he refused to comply with their commands and he shouted for them to " '[g]et the f*** out of [his] yard.' " He then kicked a bucket of water at Laird, wetting him. Defendant wrapped a belt around his fist and took off his shirt to prepare to fight one or both of the officers. After Hernandez tackled defendant, defendant pulled on Hernandez's vest and attempted to bite him. Defendant then kicked and flailed his arms as Hernandez, Laird, and other officers attempted to subdue him.

The section 69 offense, resisting an officer by force or threats, is facially a crime of violence—it has use of force or threats as an element of the offense. The record supports the conclusion that defendant committed that offense when he pulled and attempted to bite Hernandez (and also when he kicked and flailed his arms as Hernandez, Laird, and other officers attempted to subdue him). The section 148 offense, resisting an officer, is not facially a crime of violence—it does not have use of force as an element of

7.

the offense. However, the manner in which defendant resisted the officers, separate from the violent conduct against Hernandez that supported the section 69 conviction, included violence. Defendant kicked a bucket of water at Laird and flailed and kicked at Laird and other officers as they attempted to subdue him. The record supports the conclusion that defendant committed the section 148 offense in a violent manner.

Because the trial court could have concluded from the record that defendant committed two crimes of violence against different victims, it did not err in imposing, rather than staying, the sentence on the section 148 conviction.

## C. Senate Bill 136

Defendant argues his prior prison term enhancement must be stricken based on the retroactive application of Senate Bill 136. The People agree, as do we.

Effective January 1, 2020, Senate Bill 136 amended section 667.5, subdivision (b) to limit application of prior prison term enhancements to only prior prison terms that were served for sexually violent offenses as defined by Welfare and Institutions Code section 6600, subdivision (b). (§ 667.5, subd. (b).) (Stats. 2019, ch. 590, § 1.) That amendment applies retroactively to all cases not yet final on Senate Bill 136's effective date. (*People v. Lopez* (2019) 42 Cal.App.5th 337, 341–342, citing *In re Estrada* (1965) 63 Cal.2d 740, 742.)

Here, the trial court imposed one one-year section 667.5, subdivision (b) prior prison term enhancement. The trial court specified that it imposed the enhancement for the first alleged prior prison term of defendant's five prior prison terms. That term was served for convictions of receiving stolen property (§ 496, subd. (a)), burglary (§ 459), and petty theft (§ 666), none of which is a sexually violent offense as defined in Welfare and Institutions Code section 6600, subdivision (b).[4] On January 1, 2020, defendant's

---

[4] The trial court indicated at the sentencing hearing that, despite finding defendant had suffered five prior prison terms, it was imposing only one enhancement based on "the first prison prior alleged." We noted that defendant's other prior prison terms were

8.

case was not yet final. Therefore, as the parties agree, defendant is entitled to the ameliorative benefit of Senate Bill 136's amendment to section 667.5, subdivision (b).

Where an appellate court strikes (or orders stricken) a portion of a sentence, remand for " 'a full resentencing as to all counts is [generally] appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances.' " (*People v. Buycks* (2018) 5 Cal.5th 857, 893.) However, remand is unnecessary where the trial court has imposed the maximum possible sentence. (*People v. Lopez, supra*, 42 Cal.App.5th at p. 342.)

Here, defendant was sentenced to the maximum possible sentence on each count[5] so resentencing is not required if the conviction is reinstated. We therefore strike defendant's prior prison term enhancement and direct the trial court to reinstate the sentence, as modified by this opinion, on condition that defendant is not granted mental health diversion, or is granted diversion but does not successfully complete the program.

## DISPOSITION

The judgment is conditionally reversed. The matter is remanded to the trial court with directions to hold a diversion eligibility hearing under section 1001.36. If the court finds defendant eligible under that statute, it may grant diversion. If defendant then satisfactorily performs in diversion, the court shall dismiss the charges. (§ 1001.36, subd. (e).) However, if the court does not grant diversion, or it grants diversion, but defendant fails to satisfactorily complete it (§ 1001.36, subd. (d)), then the court shall

served for convictions of driving under the influence of alcohol (Veh. Code, § 23153, subd. (a)), resisting an executive officer (§ 69), dissuading a witness (§ 136.1, subd. (c)(1)), burglary (§ 459), and committing domestic violence (§ 273.5). None of those offenses is a sexually violent offense as defined in Welfare and Institutions Code section 6600, subdivision (b).

[5] The trial court did not impose four of the five proved prior prison term enhancements. However, those prior prison term enhancements could not be imposed now as a result of Senate Bill 136. (See fn. 4, *supra*.)

reinstate defendant's conviction, reimpose the sentence as modified by this opinion, and forward a certified copy of the resulting amended abstract of judgment to the appropriate entities.