Filed 3/26/13  P. v. Glasgow CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B237077 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No.  TA115998) |
| v. | |
| CHRISTOPHER NATHANIEL GLASGOW et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Eleanor J. Hunter, Judge.  Affirmed in part, reversed in part and remanded with directions.

Marta I. Stanton, under appointment by the Court of Appeal, for Defendant and Appellant Christopher Glasgow.

Linn Davis, under appointment by the Court of Appeal, for Defendant and Appellant Annetta Alvarez.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven E. Mercer and Kathy S. Pomerantz, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Christopher Nathaniel Glasgow challenges his convictions for possession of cocaine base and marijuana for sale, possession of firearms and body armor by a felon, and unlawful possession of ammunition. He maintains that his judgment of conviction must be reversed due to insufficiency of the evidence and sentencing error. Respondent acknowledges certain errors in Glasgow's sentence, and also contends that it contains other defects requiring resentencing. Although we reject Glasgow's contentions regarding the sufficiency of the evidence, we conclude that his sentence is incorrect, and thus reverse the judgment against him for resentencing.

Appellant Annetta Marie Alvarez, Glasgow's codefendant, was convicted of possession of cocaine base and marijuana for sale, storing a controlled substance, and unlawful firearm activity. Her court-appointed counsel has filed an opening brief raising no issues. Following our independent examination of the entire record pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*), we conclude that no arguable issues exist, and affirm the judgment against her.

## PROCEDURAL BACKGROUND

On March 22, 2011, an information was filed, charging Glasgow and Alvarez in counts 1 and 2 with possession of cocaine base and marijuana for sale (Health & Saf. Code, §§ 11351.5, 11359). The information further charged Glasgow in counts 3, 5, and 6 with possession of a firearm as a felon (former Pen. Code, § 12021, subd. (a)(1)), in count 4 with unlawful possession of ammunition (former Pen. Code, § 12316, subd. (b)(1)), in count 7 with possession of body armor as a violent felon (former Pen. Code, § 12370, subd. (a)), and in counts 8 and 9 with the transportation of a controlled substance for sale (Health & Saf.

2

Code, § 11352, subd. (a)).[1]  The information also charged Alvarez in count 10 with providing storage for a controlled substance (Health & Saf. Code, § 11366.5, subd. (a), and in counts 11 and 12 with unlawful firearm activity (former Pen. Code, § 12021, subd. (d)(1)).

The information asserted a gang allegation against appellants with respect to each count (Pen. Code, § 186.22, subd. (b)(1)(A)).  The information further alleged, under count 1, that Glasgow was personally armed during the offense (Pen. Code, § 12022, subd. (c)), and under count 2, that a principal was armed during the offense (Pen. Code, § 12022, subd. (a)(1)).  In addition, accompanying all the counts against Glasgow were allegations that he had suffered prior convictions (Pen. Code, §§ 667, subd. (a)(1), 667.5, subd. (b)), including two "strikes," for purposes of the "Three Strikes" law (Pen. Code, §§ 667, subds. (b) - (i), 1170.12, subds. (a) - (d)).  The information also alleged a prior conviction enhancement against Glasgow under counts 1, 8, and 9 (Health & Saf. Code, 11370.2, subd. (a)).

Appellants pleaded not guilty and denied the special allegations.  The trial was bifurcated regarding Glasgow's prior convictions.  On October 5, 2011, a jury found appellants guilty as charged and found the gang and gun use allegations to be true.[2]  Later, an amended information was filed against Glasgow, alleging additional prior convictions.  On November 2, 2011, after finding the prior conviction allegations to be true, the trial court denied Glasgow's motion to strike

---

[1]     The Legislature has repealed several provisions of the Penal Code under which appellants were convicted and replaced them with new statutes carrying over the repealed provisions without substantive change.  (Cal. Law Revision Com. com., 51D pt. 1 West's Ann. Pen. Code (2011 supp.) foll. § 12000, p. 32.)  For simplicity, we refer to the provisions under their former numbers.

[2]     During the jury trial, Glasgow stipulated that he had a prior felony conviction.

his prior convictions, and sentenced him to an aggregate term of 213 years to life. The court also sentenced Alvarez to an aggregate term of five years.

## FACTS

A. *Prosecution Evidence*

1. *Background*

Los Angeles Police Department (LAPD) Detective Erik Shear, a gang expert, testified that Bounty Hunter Bloods are a gang whose territory lies primarily in Watts. He opined that Glasgow belongs to the Bounty Hunter Bloods, and that Alvarez and Glasgow's sister Liza are "associates" of the gang who support its activities.[3]

In March 2008, Alvarez leased a residence on 108th Street in Los Angeles. She received assistance from the Los Angeles housing authority in order to pay her rent. On March 3, 2010, the management company responsible for the residence informed Alvarez that her rent was to be increased, and that the housing authority intended to decrease her subsidy. The management company also told her that she could remain in the residence if she paid a portion of the rent. On March 23, 2010, Alvarez notified the management company that she intended to remain in the residence for another year.

2. *February 11, 2010 Cocaine Sale (Count 8)*

In early 2010, Rock Holcomb, a special agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, and Firearms (ATF), oversaw "controlled buys" of narcotics by a confidential informant, Deshun Jones. Jones

---

[3]     Because Glasgow and his sister share a surname, we refer to her by her first name.

was a member of the Bounty Hunter Bloods. On February 11, 2010, Holcomb, together with Detective Shear, arranged for Jones to meet Glasgow in a parking lot, where Glasgow sold Jones 44.9 grams of cocaine base for $1,600.

### 3. *March 4, 2010 Cocaine Sale (Count 9)*

On March 4, 2010, Holcomb arranged another meeting between Jones and Glasgow during which Jones paid Glasgow $1,600 for 49.2 grams of cocaine base.

### 4. *April 14, 2010 Offenses (Counts 1-7, 10-12)*

During Detective Shear's investigation into Glasgow's cocaine sales, he obtained information that Glasgow stored narcotics at Alvarez's 108th Street residence. At 11:30 a.m. on April 14, 2010, Shear and other LAPD officers arrived at the residence to execute a search warrant. They waited for Glasgow to leave the residence, as Shear wanted to detain him outside the residence while it was searched.

Shortly before 3:00 p.m., an SUV arrived at the residence containing Glasgow, his sister Liza, and Bobby Irvin, a Bounty Hunter Bloods gang member. After Glasgow unlocked the residence's front door, he and the other occupants of the SUV entered the residence for ten minutes and then returned to the SUV. In an unmarked patrol car, LAPD Officer Manuel Moreno followed the SUV, which Liza drove. When Moreno saw Liza disregard a red light, he radioed marked patrol cars to intercept the SUV. After five or six patrol cars initiated a traffic stop, Liz halted the SUV, but she and the other occupants refused to leave the SUV when the police officers ordered them to do so. Instead, she drove away. Moreno and the other officers followed her.

After the SUV drove a distance, Glasgow got out and ran through a housing project. LAPD Officer Hamilton Alvarenga, who chased Glasgow on foot, saw

5

him handle a gun and then throw it onto the roof of a project building. Moreno remained in his vehicle, but also saw Glasgow throw a gun onto a rooftop as he ran from pursing officers. When arrested, Glasgow had $1,845 in cash. Following the arrest, a loaded gun was recovered from the rooftop.

Moreno obtained Glasgow's keys to the 108th Street residence and gave them to Detective Shear. During the search of the residence, officers found Glasgow's driver's license in the living room. They also saw adult male and female clothing in the laundry room and a bedroom.[4] Within that bedroom's closet, they discovered a purse containing approximately six ounces of rock cocaine, a laptop bag containing approximately three ounces of marijuana, a partially loaded assault rifle, an LAPD armored vest, a weight scale and plastic sandwich bags, as well as a man's shirt, a woman's shoes, and a receipt for car repairs bearing Glasgow's name. The bedroom's dresser disclosed a photograph of Glasgow and Alvarez, a loaded handgun, and ammunition. A man's motorcycle jacket and hats were also discovered in the bedroom, and two toothbrushes were found in the adjoining bathroom.

Detective Shear opined that the cocaine and marijuana found in the residence were possessed for the purposes of sale. He noted that the quantities of cocaine and marijuana were too large for personal use, that no signs of drug use were found in the residence, and that there was evidence of sales, namely, the weight scale and sandwich bags.

---

[4]  In addition, the officers saw children's clothing inside the residence.

### 5. *Subsequent Events*

Alvarez was not immediately arrested after the search of the 108th Street residence. According to the records of the management company responsible for the residence, on April 16, 2010, she moved without providing the required 30 days notice or paying her final month's rent. Later, on April 22, 2010, Alvarez spoke by phone with Glasgow, who was incarcerated. An audio recording of the call was played for the jury. During the call, after Alvarez said that she had developed a "funny feeling," Glasgow said that Alvarez "could have moved the groceries and the furniture on [her] own" and that "the place was burnt" because too many people visited it. Detective Shear opined that Glasgow and Alvarez were speaking in code, and that Glasgow was telling Alvarez that she should have moved the drugs and guns from the 108th Street residence when she suspected that too many people were aware of it.

### 6. *Gang Evidence*

Detective Shear testified that the Bounty Hunter Bloods engage in many crimes, ranging in seriousness from vandalism and street drug sales to shootings, assaults with deadly weapons, and murders. He opined that the crimes charged against appellants had been committed for the benefit of that criminal street gang. (Pen. Code, § 186.22, subd. (b)(1)(A).)

### B. *Glasgow's Defense Evidence*

Bettye McCall testified that on April 13, 2010, she met with Glasgow and Liza to discuss his application to rent an apartment she owned on South Normandie. The application identified his residence as an address on West 27th Street. McCall asked Glasgow to pay the deposit and first month's rent the following day.

According to Glasgow's mother Joyce, in April 2010, Glasgow lived with her on West 27th Street, worked at a motorcycle shop called the "Hog Pit," and had several girlfriends, including Alvarez. Joyce did not believe that the men's clothing found in the 108th Street residence belonged to Glasgow because they were the wrong size. She also testified that Liza owned a gun. On April 11 or 12, 2010, Joyce lent Glasgow approximately $30,000, including $2,000 to pay McCall.

Glasgow testified that between 1:30 and 2:00 p.m. on April 14, 2010, Alvarez asked him by phone to transport a vacuum cleaner from the 108th Street residence to a Maie Avenue apartment she had rented. Glasgow picked up Alvarez's keys from her son and went to the 108th Street residence in an SUV with Liza and Bobby Irvin. Upon entering the residence, he discovered that the vacuum cleaner had to be assembled before it could be moved, so he decided not to transport it.

After Glasgow, Liza, and Irvin left the residence, police cars forced Liza to stop their SUV. Glasgow denied that Liza ran a red light. He further maintained that when she offered her driver's license and registration to the officers, they refused to accept them, and instead ordered the SUV's occupants to leave it. Instead of complying, Liza told Glasgow, "I got my gun," and sped away. Liza soon stopped the vehicle, tossed her gun onto Glasgow's lap, and told him to run. He left the SUV, immediately threw the gun on the ground, and tried to flee, but was arrested.

According to Glasgow, he met with Jones to "hook him up" with someone who sold fake insurance cards. He further testified that the assault rifle in the 108th Street residence was the property of Alvarez's "baby daddy," and that the drugs in the residence belonged to Alvarez's son, who sold drugs. He also stated that as a parolee with two strikes, he tried to avoid visiting the residence due to the potential criminal activity in it.

C. *Alvarez's Defense Evidence*

Alvarez testified that after she began dating Glasgow in 2009, he frequently visited the 108th Street residence and stayed overnight. In February 2010, she sought approval from the housing authority to rent a new residence. On April 1, 2010, she signed a lease for an apartment on Maie Avenue, obtained a key for it, and began moving in. The last date she entered the 108th Street residence was April 9, 2010, when she gave Glasgow her only key to it. She testified that she did not permit Glasgow to store the drugs and guns found in the residence, and that she never saw them while she lived there. She also denied that her son had a key to the 108th Street residence.

Tanisha Bailey, Alvarez's friend, testified that on April 9, 2010, she visited the 108th Street residence, and encountered Alvarez and Glasgow. After Alvarez gathered up some clothes, Bailey and Alvarez walked to an apartment on Maie Avenue. Alvarez had a key to the apartment, which contained furniture and Alvarez's children. According to Bailey, some of the furniture shown in the photographs of the LAPD search of the 108th Street residence differed from the furniture she saw there on April 9, 2010.

D. *Rebuttal and Surrebuttal*

In rebuttal, the prosecution presented an audio recording of Officer Moreno's April 14, 2010 radio transmissions, which disclosed that after he reported that the SUV had run a red light, he requested a ladder to retrieve a gun. In addition, the prosecution offered field identification cards for Glasgow indicating that he was a member of the Bounty Hunter Bloods, and evidence that no motorcycle shop called the "Hog Pit" was located at the address Glasgow had provided for it.

9

In surrebuttal, Joyce Glasgow testified that she had recently visited the Hog Pit.

## DISCUSSION

### I *Glasgow*

Glasgow contends (1) that his convictions for possession of controlled substances for sale and possession of firearms and body armor as a felon fail for want of substantial evidence, and (2) that there was sentencing error. As explained below, although we reject his challenges to the sufficiency of the evidence, we conclude that his sentence discloses errors requiring a reversal for resentencing.

### A. *Substantial Evidence*

We begin with Glasgow's contentions regarding the adequacy of the evidence, which target his convictions for the offenses on April 14, 2010.

#### 1. *Standard of Review*

Our inquiry follows established principles. "In determining whether the evidence is sufficient to support a conviction . . . , 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citations.] Under this standard, 'an appellate court in a criminal case . . . does not ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.' [Citation.] Rather, the reviewing court 'must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence -- that is, evidence which is reasonable, credible, and of solid value -- such that a reasonable

10

trier of fact could find the defendant guilty beyond a reasonable doubt.'
[Citation.]" (*People v. Vy* (2004) 122 Cal.App.4th 1209, 1224.)

> 2. *Possession of Contraband in the 108th Street Residence (Counts 1, 2, 5-7)*

Glasgow challenges his convictions for possession of the firearms, body armor, and drugs found in the 108th Street residence. Generally, the offenses of possession of drugs for sale and possession of a firearm as a felon include as elements possession and knowledge of the contraband. (*People v. Meza* (1995) 38 Cal.App.4th 1741, 1745-1746 [possession of drugs for sale]; *People v. Jeffers* (1996) 41 Cal.App.4th 917, 922 [possession of a firearm by a felon].)[5] Glasgow contends there is insufficient evidence that he had the knowledge required for possession of the contraband.

To establish the element of possession, the prosecution must demonstrate that the defendant had actual or constructive possession. (*People v. Cordova* (1979) 97 Cal.App.3d 665, 670.) "Actual possession occurs when the defendant exercises direct physical dominion and control over the item . . . . [Citation.] Constructive possession does not require direct physical control over the item 'but does require that a person knowingly exercise control or right to control a thing, either directly or through another person or persons.' [Citation.]" (*People v. Austin* (1994) 23 Cal.App.4th 1596, 1608-1609 (*Austin*), disapproved on another ground in *People v. Palmer* (2001) 24 Cal.4th 856, 867.) Exclusive possession and control is not required (*People v. Rushing* (1989) 209 Cal.App.3d 618, 622

---

[5]    Although our research has disclosed no case holding that possession of body armor by a violent felon is also subject to these requirements, the offense's close similarity to possession of a firearm by a felon supports that conclusion. The parties agree.

11

(*Rushing*); *People v. Patino* (1984) 160 Cal.App.3d 986, 996 (*Patino*)), as a showing of joint and constructive possession is sufficient (*People v. Haynes* (1967) 253 Cal.App.2d 1060, 1064 [possession of drugs] (*Haynes*); *People v. Nieto* (1966) 247 Cal.App.2d 364, 368 [possession of firearm by a felon]). Possession and knowledge may be proved by circumstantial evidence. (*People v. Cordova*, *supra*, 97 Cal.App.3d at pp. 669-670.)

As instructive application of these principles is found in *Haynes*. There, a man and woman were charged with possession of marijuana for sale. (*Haynes*, *supra*, 253 Cal.App.2d at p. 1061.) At trial, evidence was presented that police officers, upon executing a search warrant for the woman's residence, found both defendants there, as well as a large amount of marijuana and materials for packaging it. (*Id*. at p. 1063.) The man also had traces of marijuana in his pocket. (*Id*. at pp. 1063-1064.) Inside a bedroom closet were the man's shoes, a suit, and a laundry receipt for the suit bearing the man's name and the residence's address. (*Ibid.*) The appellate court concluded that this evidence was sufficient to show that the defendants "jointly occupied the premises where the marijuana was found; had knowledge of the presence of that marijuana and its narcotic character; had access thereto; and had joint control thereof." (*Id*. at pp. 1064-1065; see also *Patino*, *supra*, 160 Cal.App.3d at pp. 995-996 [there was sufficient evidence that defendant possessed vials of drugs in mother's home, as officers found document identifying the home as defendant's residence, and one vial was found in sweater fitting defendant]; *Rushing*, *supra*, 209 Cal.App.3d at pp. 620-621 [there was sufficient evidence that defendant possessed cocaine found in apartment he shared with three other persons, in view of ledger of drug sales bearing defendant's first name found near cocaine].)

Here, there is ample evidence that Glasgow "'knowingly exercise[d] control'" over the contraband in the 108th Street residence (*Austin*, *supra*, 23

12

Cal.App.4th at pp. 1608-1609). Aside from disclosing that Glasgow sold cocaine and marijuana, the record shows that he conducted his sales operation out of the residence, with Alvarez's cooperation. Alvarez testified that Glasgow frequently stayed overnight in the residence, and Detective Shear testified that he saw Glasgow enter it with a key. All the contraband was found in a bedroom containing men's and women's clothing. Inside the bedroom closet were large quantities of cocaine and marijuana, as well as material for packaging drugs, an assault rifle, body armor, a receipt bearing Glasgow's name, and a man's shirt. The remaining items of contraband -- a handgun and ammunition -- were in the bedroom's dresser, which also displayed a photo of appellants. In addition, Glasgow's secretive jailhouse phone conversation with Alvarez indicated their joint awareness of the contraband and its unlawful character. In view of this evidence, the jury reasonably found that Glasgow knew of the contraband and had constructive possession of it.

### 3. *Possession of Loaded Gun In Housing Project (Counts 3 & 4)*

Glasgow contends there is insufficient evidence to support his convictions for the offenses involving the loaded gun found in the housing project, namely, possession of a gun as a felon and possession of ammunition. At trial, the jury was instructed with CALCRIM No. 2511, which stated in pertinent part: "If you conclude that the defendant possessed a firearm, that possession was not unlawful if the defendant can prove the defense of momentary possession. In order to establish this defense, the defendant must prove that: [¶] 1. He possessed the firearm only for a momentary or transitory period; [¶] 2. He possessed the firearm in order to abandon, or dispose of, or destroy it; [¶] and [¶] 3. He did not intend to prevent law enforcement officials from seizing the firearm." Glasgow argues that the record conclusively establishes this defense, pointing to his own

13

testimony that he threw the gun away immediately after Liza tossed it to him.  We disagree.

The "momentary possession" defense is traceable to *People v. Mijares* (1971) 6 Cal.3d 415, 420, in which our Supreme Court determined that defendants charged with possession of illegal drugs may assert as a defense that they held the drugs only to dispose of them in a safe manner.  In so concluding, the court explained that its decision "in no way insulates from prosecution . . . those individuals who, fearing they are about to be apprehended, remove contraband from their immediate possession." (*Id*. at p. 422.)  This qualification of the defense's application is reflected in the elements of CALCRIM No. 2511.  (See *People v. Hurtado* (1996) 47 Cal.App.4th 805, 810-811 (*Hurtado*).)[6]

Here, there is sufficient evidence that Glasgow curtailed his possession of the handgun only because he realized that he would soon be apprehended.  According to Officers Moreno and Alvarenga, Glasgow held the gun while he ran from pursuing officers, and threw it onto a building rooftop only moments before he was captured.  Because this testimony supports the reasonable inference that

---

[6]     As respondent notes, there is a division of opinion regarding the extent to which this defense is available to a defendant charged with possession of a firearm as a felon. In *People v. Pepper* (1996) 41 Cal.App.4th 1029, 1037-1038 (*Pepper*), the appellate court concluded that convicted felons may not assert the defense, and that they are permitted momentary possession of a handgun only in situations satisfying the elements of other defenses, namely, self-defense, defense of others, and legal necessity.  In contrast, in *Hurtado*, the appellate court rejected *Pepper* and reached the contrary conclusion.  (*Hurtado*, *supra*, 47 Cal.App.4th at p. 813.)  Later , in *People v. Martin* (2001) 25 Cal.4th 1180, 1191, our Supreme Court discussed *Hurtado* with approval, and remarked in dictum that the recognition of the defense "serves the salutary purpose and sound public policy of encouraging disposal . . . of dangerous items such as controlled substances and firearms." (*Ibid*.)  It is unnecessary for us to examine this division of opinion because there is substantial evidence to support the jury's rejection of the defense.

14

Glasgow disposed of the gun to prevent it from being found in his possession when arrested, the jury reasonably rejected his "momentary possession" defense.

B. *Sentencing*

Glasgow raises several challenges to his sentence. In addition, respondent maintains that Glasgow's sentence contains other defects that render it unauthorized. For the reasons discussed below, we conclude that the matter must be remanded for resentencing.

Upon finding that Glasgow had two prior strikes under the Three Strikes law, the trial court sentenced him to a total term of 213 years to life, determined as follows: consecutive terms of 25 years to life on counts 1 through 3 and 5 through 9; two five-year enhancements pursuant to Penal Code section 667, subdivision (a)(1); and a three-year enhancement pursuant to Health and Safety Code section 11370.2, subdivision (a). In addition, on count 1, the trial court imposed a concurrent one-year enhancement under former Penal Code section 12022, subdivision (c), and on count 2, a concurrent one-year enhancement under former Penal Code section 12022, subdivision (a)(1). Punishment was stayed with respect to count 4 (§ 654) and the gang enhancements (Pen. Code, § 186.22, subd. (b)(4)(A))[7].

1. *Refusal to Strike Prior Convictions*

Glasgow contends the trial court erroneously declined to dismiss one or more of his serious or violent convictions. Under the Three Strikes law, the

---

[7] All further statutory citations are to the Penal Code, unless otherwise indicated.

decision to dismiss or "strike" a prior felony conviction is consigned to the trial court's discretion. (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 504.) The trial court must consider whether, "in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

Under these standards, the trial court did not err in denying Glasgow's motion to dismiss the strikes, in view of his lengthy criminal record and the circumstances of his present crimes. Generally, abuse of discretion in sentencing "is found only where [the trial court's] choice is 'arbitrary or capricious or "'exceeds the bounds of reason, all of the circumstances being considered.'" [Citations.]'" (*People v. Trausch* (1995) 36 Cal.App.4th 1239, 1247, quoting *People v. Welch* (1993) 5 Cal.4th 228, 234.) We see no abuse of discretion here.

When sentenced, Glasgow was 38 years old. As a juvenile, petitions were sustained against him for taking a vehicle without the owner's consent, burglary, robbery, and assault with a deadly weapon. After turning 18, Glasgow was convicted of assault with a deadly weapon and a firearm (1990), possession of contraband in prison (1992), receiving stolen property (1992), possession of a firearm as a felon (1992, 1995), robbery (1995), possession of a controlled substance for sale (2003), and murder (2011).[8] Furthermore, he committed the offenses at issue here while on parole.

Glasgow maintains that he falls outside the spirit of the Three Strikes law because none of his current offenses resulted in physical injury and four were

---

[8]     In an unrelated criminal proceeding, Glasgow was convicted of murder after his arrest for the offenses charged in the underlying action, but before sentencing occurred.

16

related to drug sales. However, that law "does not require multiple violent felony offenses to come within the statutory scheme." (*People v. Strong* (2001) 87 Cal.App.4th 328, 340, italics omitted.) Notwithstanding the absence of resulting injury from his current offenses, his long record of criminal conduct -- including violent felonies -- establishes that he is "'the kind of revolving-door career criminal for whom the Three Strikes law was devised.'" (*Ibid.*, quoting *People v. Gaston* (1999) 74 Cal.App.4th 310, 320.)

### 2. *Section 654*

Glasgow challenges the sentences imposed on counts 5 through 7, charging him with possession as felon of the two firearms and the body armor found in the 108th Street residence. Pointing to subdivision (a) of section 654, which prohibits multiple punishment for "[a]n act or omission that is punishable in different ways by different provisions of law," Glasgow argues that the trial court erred in imposing punishment for each offense because they arose from a single act or course of conduct. As explained below, we disagree.

Generally, multiple punishments are proper under the statute if the defendant pursues suitably independent criminal objectives. (*People v. Williams* (1992) 9 Cal.App.4th 1465, 1473-1474.) Our Supreme Court has explained: "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*Neal v. State of California* (1960) 55 Cal.2d 11, 19, disapproved on another ground in *People v. Correa* (2012) 54 Cal.4th 331 (*Correa*).)

a. *Multiple Punishments for Possession of Firearms as a Felon*

Glasgow contends that multiple punishments were improper for the two counts of possession of a firearm as a felon, that is, count 5, which concerned the gun found in the bedroom dresser, and count 6, which concerned the assault rifle found in the bedroom closet. We conclude that this contention fails in light of our Supreme Court's recent decision in *Correa*, which involved a defendant who, when arrested, was hiding in a closet containing a cache of guns. (*Correa*, *supra*, 54 Cal.4th. at p. 334.) After he was convicted of seven counts of being a felon in possession of a firearm, the trial court imposed multiple punishments on the offenses. (*Ibid.*) In examining the sentence, the Supreme Court concluded that section 654 does not prohibit multiple punishment for multiple violations of a single law. (*Id*. at pp. 335-343.) However, because this determination constituted a new rule regarding section 654, the court declined to apply it retroactively to the defendant's sentence. (*Id*. at p. 344.)

The court nonetheless affirmed the sentence on an alternative basis, namely, former section 12001, subdivision (k), which provided that "'each firearm . . . shall constitute a distinct and separate offense,'" for purposes of enumerated crimes, including possession of a firearm by a felon.[9] (*Correa*, *supra*, 54 Cal.4th at pp. 342, 345.) On this matter, the court determined that the Legislature enacted that statute in 1994 to authorize multiple punishment for the enumerated crimes, notwithstanding section 654. (*Correa, supra,* at pp. 345-346.) The court thus held that such punishment was properly imposed for the defendant's simultaneous possession of firearms. (*Ibid.*)

---

[9] Former section 12001, subdivision (k), is carried over in new section 23510 without substantive change. (*Correa*, *supra*, 54 Cal.4th at p. 334, fn. 2.)

In view of *Correa*, appellant's contention fails. As former section 12001, subdivision (k) also governed Glasgow's sentence, the trial court properly imposed multiple punishments on counts 5 and 6.[10]

### b. *Possession of Firearms and Body Armor as Felon*

Glasgow also contends that section 654 bars additional punishment for possession of body armor by a violent felon (count 7) due to the punishments imposed on counts 5 and 6. For the reasons discussed below, we reject this contention because the items served different objectives.

Our research has disclosed no decision addressing whether section 654 bars multiple punishments for simultaneous possession of firearms and body armor by a felon. However, we find guidance on the issue before us from *People v. Winchell* (1967) 248 Cal.App.2d 580. There, a police officer noticed signs that someone had attempted to break into a building, and found the defendant in a nearby car. (*Id*. at pp. 581-583.) After a search disclosed a gun under the driver's seat and burglary tools on the rear seat floor, the defendant was charged with attempted burglary, possession of a firearm as a felon, and possession of burglary tools. (*Ibid*.) However, the charge of attempted burglary was dismissed, and the defendant suffered convictions only for the possession-related offenses, upon which the trial court imposed multiple punishments. (*Id*. at pp. 581-585.) In rejecting the defendant's challenge to the sentence under section 654, the appellate court held that in the absence of the attempted burglary charge, the record showed the defendant's commission of "two independent acts," viz., his possession of the

---

[10]  *People v. Spirlin* (2000) 81 Cal.App.4th 119, upon which Glasgow relies, is distinguishable, as it stands for the proposition that section 654 bars multiple punishments for a felon's possession of the *same* firearm on different dates (see *id*. at pp. 128-129). That is not the situation we confront here.

19

burglary tools and the gun, albeit simultaneously. (*People v. Winchell, supra,* at p. 597.) Accordingly, multiple punishments could be imposed.

We reach the same conclusion here. Generally, guns and body armor serve different functions: whereas guns are offensive weapons, body armor is intended to protect its wearer. Although they can be used together in criminal activities, the record discloses no evidence that Glasgow, in fact, intended to do so. Accordingly, section 654 did not prohibit multiple punishments on counts 5 through 7.

### 3. *Enhancements Under Section 667, Subdivision (a)(1)*

Glasgow maintains that the trial court improperly imposed two five-year enhancements pursuant to section 667, subdivision (a)(1), arguing that the two prior convictions underlying the enhancements were not the product of separate proceedings. Respondent agrees, but argues that the court also erred in failing to impose a five-year enhancement under section 667, subdivision (a)(1), on each of counts 1 through 3 and 5 through 9. We conclude that both contentions are correct.

We begin with Glasgow's contention. Subdivision (a)(1) of section 667 provides: "[A]ny person convicted of a serious felony who previously has been convicted of a serious felony . . . shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction *on charges brought and tried separately*. . . ." (Italics added.) In order for the "'brought and tried separately'" requirement to be satisfied, "the underlying proceedings must have been formally distinct, from filing to adjudication of guilt." (*In re Harris* (1989) 49 Cal.3d 131, 136; accord, *People v. Frausto* (2009) 180 Cal.App.4th 890, 903.) Here, the two prior convictions for robbery occurred in a single proceeding, case No. TA028842. For this reason, it was error to impose two five-year enhancements pursuant to section 667, subdivision (a)(1) for the two prior convictions. (*People v. Frausto*, *supra*, 180 Cal.App.4th at p. 903.)

20

Regarding respondent's contention, our Supreme Court has held that under the Three Strikes law, section 667, subdivision (a)(1) enhancements "are to be applied individually to each count of a third strike sentence." (*People v. Williams* (2004) 34 Cal.4th 397, 405.) Furthermore, the trial court must impose the enhancements, as they may not be stricken under any provision of law, including section 1385 (see pt.I.B.4., *post*). (*People v. Garcia* (2008) 167 Cal.App.4th 1550, 1561 (*Garcia*).) For this reason, "[t]he trial court has no discretion and the sentence is mandatory." (*People v. Purata* (1996) 42 Cal.App.4th 489, 498.) Accordingly, the trial court was required to apply a five-year enhancement under section 667, subdivision (a)(1), to each count on which it imposed a third strike sentence (counts 1 through 3 and 5 through 9).

The result of the two errors was a legally unauthorized sentence that must be corrected. (*People v. Purata*, *supra*, 42 Cal.App.4th at p. 498; see *People v. Frausto*, *supra*, 180 Cal.App.4th at p. 903.) As we conclude below that the matter must be remanded for resentencing (see pts. B.4. & B.5., *post*), we shall direct the trial court to remedy the errors.

### 4. *Gun Enhancements*

Glasgow contends the trial court erred in imposing concurrent gun use enhancements on counts 1 and 2, which concerned his possession of cocaine base and marijuana for sale on April 14, 2010. He argues that the trial court was obliged to strike the enhancements, rather than order them to run concurrently with the terms for the underlying offenses. As explained below, the matter must be remanded to the court with directions regarding each enhancement to (1) impose it as a consecutive term or (2) strike it.

Counts 1 and 2 charged Glasgow with violations of Health and Safety Code sections 11351.5 and 11359. Under count 1, the information also alleged a gun use

enhancement pursuant to subdivision (c) of section 12022, which provides that "any person who is personally armed with a firearm in the commission of a violation or attempted violation of [s]ection . . . 11351.5 . . . of the Health and Safety Code, shall be punished by an *additional and consecutive term of imprisonment . . .* for three, four, or five years." (Italics added.) In addition, under count 2, the information alleged a gun use enhancement pursuant to subdivision (a)(1) of section 12022, which provides that "any person who is armed with a firearm in the commission of a felony or attempted felony shall be punished by *an additional and consecutive term of imprisonment . . .* for one year . . . ." (Italics added.)

Unlike enhancements under subdivision (a)(1) of section 667 (see pt.I.B.3., *ante*), these gun use enhancements are subject to the trial court's discretionary authority under section 1385 to strike enhancements. (See *People v. Jones* (2007) 157 Cal.App.4th 1373, 1380-1383.) "It is well established that, as a general matter, a court has discretion under section 1385, subdivision (c), to dismiss or strike an enhancement, or to 'strike the additional punishment for that enhancement in the furtherance of justice.'" (*People v. Meloney* (2003) 30 Cal.4th 1145, 1155.) Absent a clear statutory directive to the contrary, the court retains its discretion under section 1385 to strike an enhancement when imposing a sentence under the Three Strikes law. (*People v. Bradley* (1998) 64 Cal.App.4th 386, 394-395 (*Bradley*).) When a court exercises its power to strike an enhancement, it must set forth its reasons in writing in the minutes. (*Id*. at p. 391.)

Here, in sentencing Glasgow on counts 1 and 2, the trial court imposed consecutive terms of 25 years to life on the underlying offenses. However, the court ordered the gun use enhancements to run concurrently (without stating its reasons).

We conclude that the imposition of concurrent enhancements resulted in a legally unauthorized sentence.  Generally, the trial court has "a duty to impose sentence in accord with the law."  (*Bradley*, *supra*, 64 Cal.App.4th at p. 390.)  Under section 1385, the court has the discretion only to impose an enhancement or strike it.  (*People v. Lopez* (2004) 119 Cal.App.4th 355, 364.)  Thus, for example, a court "has no authority to stay an enhancement, rather than strike it -- not, at least, when the only basis for doing either is its own discretionary sense of justice."  (*Ibid.*; *People v. Jones* (1992) 8 Cal.App.4th 756, 757-758.)  Because subdivisions (a)(1) and (c) of section 12022 specify that each enhancement shall be "an additional and consecutive term of imprisonment," the trial court had discretion only to impose them consecutively or strike them.

Respondent contends that because Glasgow was subject to indeterminate sentencing under the Three Strikes law, the trial court properly imposed concurrent gun enhancements.  As respondent notes, under that law (§§ 667, subd. (c)(6), 1170.12, subdivision (a)(6)), a court has the discretion to select concurrent or consecutive sentencing for offenses committed on the same occasion or arising from the same set of facts.  Because the offenses charged in counts 1 and 2 occurred at the same time and place, respondent argues that the trial court properly ordered the enhancements to run concurrently.  We disagree.

Because the gun enhancements are not offenses, the court's discretion under the Three Strikes law to impose concurrent terms on the offenses underlying counts 1 and 2 did not encompass the enhancements.  As our Supreme Court has explained, the provisions of the Three Strikes law upon which respondent relies mandate consecutive sentencing only for offenses not committed on the same

23

occasion and not arising from the same set of operative facts.[11] (*People v. Hendrix* (1997) 16 Cal.4th 508, 512-513; see *People v. Lawrence* (2000) 24 Cal.4th 219, 226; *People v. Deloza* (1998) 18 Cal.4th 585, 590-591.)  However, under the Three Strikes law, the court's discretion to select consecutive or concurrent sentencing for "felony counts" -- that is, offenses -- is distinct from its discretion to strike or impose enhancements, when determining the sentence for each offense.

Generally, in sentencing a three-striker convicted of multiple offenses, the trial court is required to calculate the minimum determinate term of each offense's indeterminate sentence.  (*People v. Williams, supra,* 34 Cal.4th at pp. 403-404; *People v. Cartwright* (1995) 39 Cal.App.4th 1123, 1141-1143; *People v. Ayon* (1996) 46 Cal.App.4th 385, 392, disapproved on another ground in *People v. Deloza*, *supra*, 18 Cal.4th at p. 600, fn. 10; §§ 667, subd. (e)(2)(A), 1170.12, subd. (c)(2)(A); see *People v. Nguyen* (1999) 21 Cal.4th 197, 205-206.)  Once the minimum determinate term of the sentence for an offense has been identified, applicable enhancements are added to the minimum determinate term for that offense.  (*People v. Williams, supra,* 34 Cal.4th at pp. 403-404.)  Absent a statutory directive to the contrary, the court has the discretion under section 1385 to strike or impose the enhancements with respect to each offense.  (*Bradley*, *supra*, 64 Cal.App.4th at pp. 394-395.)  Upon determining the sentence for each offense (including the imposition or striking of enhancements), the court has the discretion to select concurrent or consecutive sentences for offenses committed on the same occasion or arising from the same set of facts.  (*People v. Hendrix*, *supra*, 16

---

[11]     Section 667, subdivision (c)(6), and section 1170.12, subdivision (a)(6), state:  "If there is a current conviction for more than one felony count not committed on the same occasion, and not arising from the same set of operative facts, the court shall sentence the defendant consecutively on each count . . . . "

Cal.4th at pp. 512-513; see *People v. Lawrence*, *supra*, 24 Cal.4th at p. 226; *People v. Deloza*, *supra*, 18 Cal.4th at pp. 590-591.)

Nothing in the Three Strikes law suggests that the trial court's discretion to select concurrent sentencing for offenses also encompasses the prior stage of the sentencing determination, that is, the application of enhancements to the terms for individual offenses. Nor does the Three Strikes law contain any provision authorizing the court to impose concurrent terms for enhancements established as "additional and consecutive term[s] of imprisonment" (§ 12022, subds. (a)(1), (c)). Accordingly, the court erred in ordering the gun use enhancements to run concurrently. In sum, the matter must be remanded so that the court may exercise its discretion to impose the gun use enhancements as consecutive terms or strike them.[12]

---

[12] Although respondent claims to find support from *People v. Oates* (2004) 32 Cal.4th 1048 (*Oates*), that decision comports with our analysis. *Oates* involved sentencing under the so-called "10-20-life law" found in section 12022.53, rather than under the Three Strikes law. (*Oates, supra,* at p. 1052.) As explained below, *Oates* stands for the proposition that the trial court's discretion to impose consecutive or concurrent indeterminate sentences does not modify its duty to impose enhancements in accordance with the statutes that create them.

In *Oates*, the defendant fired a gun at several people socializing in front of a house, injuring one of them. (*Oates, supra,* 32 Cal.4th at p. 1053.) The jury found the defendant guilty of five counts of attempted murder, and also found true gun use allegations under subdivision 12022.53, subdivision (d), which provides for an "additional and consecutive" 25-years-to-life enhancement when the defendant's personal use of a gun causes great bodily injury "to any person other than an accomplice." (*Oates, supra,* at p. 1053.) In the defendant's subsequent appeal, the court held that section 654 barred the imposition of such enhancements on two separate counts of attempted murder.

Our Supreme Court reversed this determination, reasoning that the mandatory language of section 12022.53 required the imposition of multiple enhancements. (*Oates, supra,* 32 Cal.4th at pp. 1055-1062.) In so concluding, the court stated: "[T]here is nothing anomalous about applying section 12022.53 *in accordance with its language*, such that the number of subdivision (d) enhancements imposed turns on the number of people defendant attempted to murder. Moreover, . . . a trial court can mitigate concerns
*(Fn. continued on next page.)*

25

## 5. *Enhancements Under Section 667.5, Subdivision (b)*

Respondent contends the trial court erred in failing to impose or strike the enhancements pleaded and proved against Glasgow under section 667.5, subdivision (b). We agree.

Subdivision (b) of section 667.5 provides: "[W]here the new offense is any felony for which a prison sentence . . . is imposed . . . , in addition and consecutive to any other sentence therefor, the court shall impose a one-year term for each prior separate prison term . . . for any felony . . . ." As explained in *Garcia*, when a defendant is subject to sentencing as a three striker, "the trial court [is] required to impose the section 667.5, subdivision (b) prior prison term enhancements or strike them in whole or in part pursuant to section 1385, subdivision (a). Section 667.5, subdivision[] (a) . . . [,] contain[s] mandatory language, which requires the additional terms be imposed on every count. The enhancement language in section 667.5 is mandatory unless the additional term is stricken." (*Garcia*, *supra*, 167 Cal.App.4th at p. 1561, fn. omitted.)

Here, the information alleged such an enhancement under each count charged against Glasgow, and the trial court found that he had served a prior prison term, for purposes of the enhancement.[13] However, in sentencing him, the court did not refer to the enhancements, and neither imposed nor struck them. In view of *Garcia*, the trial court's failure to exercise its discretion with respect to each

about sentencing inequities by imposing concurrent, rather than consecutive, sentences where multiple subdivision (d) enhancements are found true. Thus, defendant's assertion regarding possible sentencing anomalies *does not justify departing from the statutory language*." (*Id.* at p. 1060, italics added.)

[13] We recognize that the same conviction underlies the enhancements alleged under section 667.5, subdivision (b), and the three-year enhancement that the trial court imposed under Health and Safety Code section 11370.2, subdivision (a). The court may properly impose both enhancements on the basis of a single prior conviction. (*People v. Gokey* (1998) 62 Cal.App.4th 932, 935-937.)

enhancement resulted in an authorized sentence. (*Garcia*, *supra*, 167 Cal.App.4th at p. 1561.) Accordingly, the matter must be remanded to permit the court to exercise its discretion regarding the prior prison term enhancements. (*Id.* at pp. 1561-1563; see also *Bradley*, *supra*, 64 Cal.App.4th at pp. 391-392 [trial court's failure to impose or strike section 667.5, subdivision (b) enhancement in sentencing three striker required remand for exercise of discretion].)

### 6. *Custody Credits*

Glasgow contends the trial court miscalculated his presentence custody credits. The trial court awarded Glasgow credit for 567 days of actual custody. He argues that he is entitled to credit for an additional day of actual custody . Respondent agrees. We conclude that Glasgow's custody credits must be corrected to reflect a total of 568 days of actual custody.

### II *Alvarez*

After an examination of the record, Alvarez's court-appointed counsel filed an opening brief raising no issues and requesting this court to review the record independently pursuant to *Wende*. In addition, counsel advised Alvarez of her right to submit by supplemental brief any contentions or argument she wished the court to consider. Alvarez has neither presented a brief nor identified any potential issues. Our examination of the entire record establishes that Alvarez's counsel has fully complied with her responsibilities and that no arguable issues exist. (*Wende*, *supra*, 25 Cal.3d at p. 441.)

27

## DISPOSITION

The judgment against Glasgow is reversed solely with respect to his sentence, and the matter is remanded for resentencing for limited purposes, with directions to the trial court to impose a single five-year enhancement under section 667, subdivision (a)(1), on each of counts 1 through 3 and 5 through 9; to exercise its discretion with respect to the enhancements under section 12022, subdivisions (a)(1) and (c), and section 667.5, subdivision (b); and to correct Glasgow's custody credits. Upon resentencing, the court is directed to prepare a corrected abstract of judgment and forward a copy to the Department of Corrections and Rehabilitation. The judgment against Glasgow is affirmed in all other respects.

The judgment against Alvarez is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MANELLA, J.


We concur:



WILLHITE, Acting P. J.



SUZUKAWA, J.



28