Filed 9/26/14  P. v. McIntyre CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B251488 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA395186) |
| v. | |
| CHARLES McINTYRE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. William N. Sterling, Judge.  Affirmed as modified.

Murray A. Rosenberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Margaret E. Maxwell and Stephanie C. Santoro, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Following a jury trial, appellant Charles McIntyre, was convicted of one count of stalking (Pen. Code, § 646.9, subd. (a), count 1),[1] one count of making criminal threats (§ 422, count 3), and one count of misdemeanor battery (§ 243, subd. (e)(1), count 8).[2] Appellant admitted the prior conviction allegations. The trial court sentenced appellant to state prison for 13 years. On count 3 the trial court selected the upper term of three years, doubled to six (§§ 1170.12, subds. (a)-(d); 667, subds (b)-(i)) plus five years (§ 667, subd (a)), plus two years for two prior prison terms (§ 667.5, subd. (b)). A six-year sentence on count 1 was stayed pursuant to section 654. On count 8, appellant was ordered to serve a one-year concurrent term in county jail.

On appeal, he contends the trial court erred in failing to stay his sentence as to the battery conviction (count 8) pursuant to section 654. The People note errors in the abstract of judgment, which appellant concedes.

We agree that modifications must be made to the abstract of judgment. Finding no merit to appellant's contention, we affirm.

## FACTS

**Prosecution Case**

### *Incidents on September 25-26, 2011*

In June 2011, Denise P. (Denise) began dating appellant. The relationship lasted approximately three months until Denise ended it when she found out appellant was married. Denise told appellant to stop contacting her but he continued to leave voicemails and send her text messages.

On the evening of September 25, 2011, appellant appeared outside Denise's apartment. He was cursing and yelling and managed to open the screen door because it was unlocked. Denise attempted to close the door and ended up tussling with appellant.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] Appellant was found not guilty of arson (count 2), assault with a firearm (counts 4 & 6), attempted murder (count 5), criminal threats (count 7), and vandalism (count 9).

Appellant grabbed Denise by the shoulders and shook her "back and forth." Denise fell back against a wall and injured her back. Appellant slapped Denise as she tried to get up. Denise's cousin, Tera Wright (Wright), who lived close by, heard Denise "hollering for help." Wright went to help Denise, and Wright's husband escorted appellant away. Denise returned to her apartment.

At approximately 3:30 a.m. the following morning, Los Angeles Police Department (LAPD) Officer Christopher Walters responded to a shooting call at Denise's apartment. Appellant was sitting on a curb across the street from Denise's apartment. He told Officer Walters that someone shot at his car. Officer Walters observed what appeared to be bullet holes in appellant's car and took photographs of the damage. LAPD Officer Arroyo interviewed Denise and placed her under arrest. Denise denied shooting at appellant and consented to a search of her apartment. No gun was found. At the police station Officer Walters interviewed Denise and observed scratches on her nose and feet, swelling on her cheek, bleeding from her shoulder and a neck injury. Denise told Officer Walters that appellant had inflicted the injuries on her when they tussled a few hours earlier. Denise was released. Photographs of Denise's injuries were admitted into evidence at trial.

### Subsequent Incidents

On October 20, 2011, appellant returned to Denise's apartment. The screen door was locked and appellant pounded on the living room window until it broke. LAPD Officer Kris Cummings observed the broken glass on the living room floor. Appellant arrived while Officer Cummings was still at the scene. Denise identified appellant as the person who broke her window but was unwilling to make a citizen's arrest. Appellant was not arrested.

On November 1, 2011, appellant returned to Denise's apartment once more. Through the screen door, appellant yelled that Denise was not going to be "without him" and he threatened to hurt her. At some point, appellant spit through the screen door. Appellant threatened to kill Denise and told her she would have to relocate because he

3

was going to torture her until she moved. Denise called the police because she was scared appellant would carry out his threats. Appellant left before LAPD Officer Carlos Guerrero arrived at the apartment. Denise received a phone call from appellant and handed the phone to Officer Guerrero. Officer Guerrero heard appellant threaten to "take out [Denise's] legs." When Officer Guerrero identified himself as a police officer, appellant became less threatening. Officer Guerrero told appellant there was a restraining order prohibiting him from coming near Denise and he would be arrested if he violated the order.

On December 3, 2011, at approximately 8:45 p.m. appellant walked into the 77th Street police station and reported that Denise shot at him and the bullets hit his car. LAPD Officer Everardo Amaral photographed appellant's car which had bullet holes consistent with appellant's version of events. Denise denied shooting at appellant or his vehicle but was arrested. She consented to a search of her apartment and no weapons were found. Sometime later, Officer Amaral compared the photographs he took of appellant's vehicle with those taken by Officer Walters after the September 25, 2011, shooting incident. The bullet hole damage was the same in both photographs.

On December 9, 2011, Denise was in her apartment when she looked up and saw appellant pointing a gun at her through the screen door. Appellant told Denise he could kill her "right now." Denise got on the ground and called the police. While on the phone she heard two gunshots.

On December 12, 2011, at approximately 1:00 a.m., appellant sent Denise a text message stating he was outside her apartment and had money for her. Denise called the police. Appellant continued to send her text messages asking her to come outside and talk to him. Denise left her apartment and went to stay with her mother. A few hours later, Wright saw appellant walking towards the street from the direction of appellant's apartment. Wright saw that Denise's bedroom was on fire. Wright's brother called the police and fire departments. An arson investigation concluded the fire was purposely set.

4

On January 7, 2012, at approximately 2:50 a.m., Denise was at an after-hours club. Appellant, accompanied by a young lady, approached Denise and said to his companion, "That's the bitch that got the police looking for me." Appellant had a gun and struck Denise twice on the side of her face with the gun. Denise fell to the ground and appellant placed the gun to her head and told her he could kill her right then. Appellant was escorted out of the club by security. Denise called her mother who took her to the police station to report the incident.

On February 27, 2012, Denise was at a gas station when she saw appellant's car parked nearby. Denise called the police and LAPD Officer Jonathan Kincaid and his partner responded. When appellant returned to his vehicle he was detained and handcuffed. While handcuffed, appellant fled on foot in the direction of a nearby nightclub. Officer Kincaid and his partner pursued appellant and arrested him.

**Defense Case**

Robert L. Begle III, an expert in cell phone records analysis and tower mapping, analyzed the cell phone records pertaining to appellant and Denise's cell phones. Based upon his review of the records, he testified that around the time of the fire at Denise's apartment on December 12, 2011, appellant was at or near a nightclub and not near Denise's apartment. He also testified that appellant made approximately 45 phone calls to Denise's cell phone in a three-hour time period that same day.

**DISCUSSION**

**I.    The Applicability of Section 654**

*A.    Contention*

Appellant contends the trial court erred when it failed to stay the sentence imposed on the battery conviction because appellant's convictions for stalking, criminal threats, and battery "against a former girlfriend were all part of a course of conduct which violated more than one statute, but nevertheless constituted an indivisible transaction in that all [of] the . . . offenses were merely incidental to or were the means of accomplishing or facilitating a single objective, appellant's attempt to keep [Denise] from

5

leaving him." The People maintain appellant harbored multiple criminal objectives that were independent of and not merely incidental to each other.

### B. Proceedings Below

During closing argument, the prosecutor summarized the testimony and referenced the acts which constituted the charge of battery. The prosecutor stated, "So let's start off September 25th, 2011. The defendant came to her home. Only the screen door is closed. He wants in. He tampered with it. Grabs Denise. She gets pushed into the outside wall, falls, gets slapped. And that's the basis of count 8." With respect to the stalking charge, the prosecutor argued, "Now, the defendant is charged with [stalking] that encompasses the entire time frame here. Talking about September 25th leading to March 16th when he was arrested for the final time. Why is he charged with stalking? Repeated unwanted contact at her home, talking about all of these instances, the 25th, October 20th, November 1st, twice, December 9th, December 12th, repeated unwanted phone calls. You have those phone records. Repeated unwanted texts and voice mail messages. The pattern of his threatening behavior."

Following appellant's convictions, sentencing proceedings were held on September 6, 2013. The trial court found, in relevant part: "I'm going to sentence him on the [section] 422. I think it's appropriate for me to sentence him on the [section] 422 because of the five-year enhancement. That's the longest sentence." Defense counsel argued that the court should strike appellant's prior convictions because he admitted them "without insisting on a trial of any kind." The court continued, "He's sentenced to serve 13 years in state prison forthwith. That's on count 3. . . . [¶] . . . [¶] As to count 1, I'm going to impose a concurrent term of six years. That's three years doubled because of the strike. That's stayed pursuant to Penal Code Section 654. It will be stayed permanently upon successful completion of sentencing in count 3. [¶] As to count 8, I'll impose a concurrent term of one year which may be served in any penal institution. That's one year in county jail, and it may be served in any penal institution. It will be concurrent."

## C.    *Legal Principles*

Section 654 provides in pertinent part:  "(a) An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."

Section 654 protects against multiple punishment rather than multiple conviction. (*People v. Harrison* (1989) 48 Cal.3d 321, 335 (*Harrison*).)  A defendant thus may not be punished for two separate crimes which arise either out of a single act or out of an indivisible transaction.  The indivisibility or divisibility of criminal conduct depends upon whether the defendant has a single or separate criminal objective.  (*People v. Latimer* (1993) 5 Cal.4th 1203, 1208; *Harrison, supra,* at p. 335.)  That is, "if all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once."  (*Harrison, supra,* at p. 335.)

If, on the other hand, "the [defendant] entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct."  (*People v. Beamon* (1973) 8 Cal.3d 625, 639.)

Whether multiple convictions were part of an indivisible transaction is primarily a question of fact.  (*People v. Avalos* (1996) 47 Cal.App.4th 1569, 1583.)  We review such a finding under the substantial evidence test.  (*People v. Osband* (1996) 13 Cal.4th 622, 730–731.)

Stalking requires two or more acts of willful, malicious and repeated harassment or following of another person, occurring over a period of time, and a credible threat intended to place the other person in fear for his or her safety or that of his or her family. (See § 646.9; *People v. Ibarra* (2007) 156 Cal.App.4th 1174, 1196–1197.)

Battery, which is defined as "any willful and unlawful use of force or violence upon the person of another" (§ 242; *People v. Shockley* (2013) 58 Cal.4th 400, 404) does not require a course of conduct but can occur by one discrete act. Section 243, subdivision (e)(1), provides: "When a battery is committed against a spouse, a person with whom the defendant is cohabiting, a person who is the parent of the defendant's child, former spouse, fiancé, or fiancée, or a person with whom the defendant currently has, or has previously had, a dating or engagement relationship, the battery is punishable by a fine not exceeding two thousand dollars ($2,000), or by imprisonment in a county jail for a period of not more than one year, or by both that fine and imprisonment."

### D.    *Analysis*

We conclude that substantial evidence supported the trial court's implied finding that appellant's battery and stalking entailed separate and distinct actions and that section 654 was inapplicable. We reject appellant's contention that the stalking count "encompassed the battery count" and that it is "impossible on the facts in this case to conclude that appellant entertained multiple objectives" with regards to both counts.

The trial court correctly recognized that the counts of stalking and criminal threats were part of a course of conduct that began on September 25, 2011, and continued via texts and unwanted contact at least through December 2011.[3] The record supports this finding as both offenses were for the purpose of harassing and frightening Denise.

The trial court could also reasonably conclude that the objective of appellant's battery on September 25, 2011, was to immediately physically injure and harm Denise. Appellant grabbed Denise by the shoulders and shook her "back and forth." Denise fell back against a wall and injured her back. Appellant then slapped Denise as she tried to get up. The court could also reasonably conclude that appellant's stalking behavior, i.e., continuously appearing at her apartment, making reports to the police that she fired a gun at him and his car, breaking her living room window, and threatening by telephone, via

---

[3]    Appellant was acquitted of attempted murder, assault with a firearm, and criminal threats (counts 5-7) arising from the incident at the after-hours club on January 7, 2012.

text, and in person to kill or injure her until she moved, was done with the objective to frighten and harass Denise for ending their relationship. One need not inflict physical harm on another person or damage property to stalk a victim. (*People v. Ewing* (1999) 76 Cal.App.4th 199, 210.)

Even if appellant's offenses are seen as a continuous course of conduct beginning with the battery which occurred on September 25, 2011, the crimes he committed are not indivisible. In *Harrison, supra,* 48 Cal.3d at page 335, our Supreme Court explained in connection with section 654, subdivision (a): "[B]ecause the statute is intended to ensure that defendant is punished 'commensurate with his culpability' [citation], its protection has been extended to cases in which there are several offenses committed during 'a course of conduct deemed to be indivisible in time.' [Citation.] [¶] It is defendant's intent and objective, not the temporal proximity of his offenses, which determine whether the transaction is indivisible."

On this record, we find the battery was independent of and not incidental to appellant's stalking behavior. (*People v. Beamon, supra,* 8 Cal.3d at p. 639.) Appellant's acts were not part of an indivisible transaction precluding multiple punishments. (*People v. Avalos, supra,* 47 Cal.App.4th at p. 1583.) The trial court's findings are supported by substantial evidence (*People v. Osband, supra,* 13 Cal.4th at pp. 730–731), and the purpose of section 654 is not offended because the imposition of the one-year concurrent term on count 8 is commensurate with appellant's culpability (*People v. Oates* (2004) 32 Cal.4th 1048, 1063). Therefore, the trial court did not err.

## II. Abstract of Judgment

The People note errors in the abstract of judgment, concerning: (1) the correct restitution and parole revocation fines; and (2) the correct statute under which the five-year enhancement for a prior serious felony was imposed. Appellant agrees. We shall direct the trial court to correct these errors.

### A.	*Restitution and Parole Revocation Fines*

The People correctly point out that there is a discrepancy between the trial court's oral pronouncement, in which it imposed a restitution fine under section 1202.4, subdivision (b)(1), and a parole revocation restitution fine under section 1202.45 each in the amount of $1,000, and the clerk's minutes and the abstract of judgment, which indicate the fine amounts as $280.

Where the clerk's minutes or abstract of judgment do not accurately reflect the oral pronouncement, the appellate court may order them corrected.  (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385–386, 388, 389.)  Here, the court's oral pronouncement setting the amounts for the restitution and parole revocation restitution fines each at $1,000 controls over the fine amounts listed in the minutes and abstract of judgment. Accordingly, we will order that the clerk's minutes and abstract of judgment shall be amended to properly reflect this aspect of the sentencing.

### B.	*Enhancement for a prior serious felony.*

The trial court's oral pronouncement of sentence on count 3 included "five years for the [section] 667[,] subdivision (a) prior plus."  The abstract of judgment erroneously reflects that the five-year enhancement was imposed under section 667.5, subdivision (a). The abstract of judgment shall be corrected to reflect the enhancement on count 3 was imposed pursuant to section 667, subdivision (a).

10

## DISPOSITION

The clerk's minutes of September 6, 2013, and the abstract of judgment dated September 25, 2013, are both ordered amended to reflect as follows: (1) that the restitution fine imposed pursuant to section 1202.4, subdivision (b)(1) and the suspended parole revocation restitution fine under section 1202.45 are each in the amount of $1,000; and (2) the five-year enhancement on count 3 for a prior serious felony was imposed pursuant to section 667, subdivision (a). As modified, the judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.*
                              FERNS

We concur:

_____, P. J.
         BOREN

_____, J.
    ASHMANN-GERST

---

\*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.